---

(No. 15299.—Judgment reversed.)
THE JERSEY ICE CREAM COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(HANNAH J. CONNELLY, Defendant in Error.)

*Opinion filed June 20, 1923—Rehearing denied October 4, 1923.*

1. WORKMEN'S COMPENSATION—*applicant must prove that injury arose out of employment.*  An accident, to be within the Compensation act, must originate in some risk of the employment, and the burden is on the applicant for compensation to prove that an accidental injury which resulted in the death of the employee arose out of the employment or that there was some causal connection between the employment and the death of the employee.

2. SAME—*finding that accidental death arose out of the employment cannot rest on conjecture.*  The Industrial Commission, on application for compensation for an accidental death, cannot indulge in theories or conjectures as to the cause of the death not based upon the evidence, and the mere fact that an employee was shot by an unknown person while at work does not justify an award of compensation where there is no evidence whatever as to why the shooting occurred.  (*Ohio Building Vault Co.* v. *Industrial Board,* 277 Ill. 96, and *Mechanics Furniture Co.* v. *Industrial Board,* 281 id. 530, distinguished.)

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. LEE W. CARRIER, Judge, presiding.

GOOD, CHILDS, BOBB & WESCOTT, (DWIGHT S. BOBB, and F. M. HARTMAN, of counsel,) for plaintiff in error.

FREEMAN, MASON & IGOE, (GEORGE H. MASON, and WILLIAM J. FLAHERTY, of counsel,) for defendant in error.

Mr. JUSTICE STONE delivered the opinion of the court:

Hannah J. Connelly, widow of Francis W. Connelly, deceased, was awarded compensation for the death of her husband. The award was confirmed by the circuit court. The question involved on this review is whether or not the death of Connelly arose out of his employment.

The facts are not controverted. Connelly had been employed for some years by the plaintiff in error selling ice to peddlers and other customers from a rear platform of its plant, located in the city of Chicago. He either collected the money or made a charge against the customer for the ice sold. The ice was brought to the platform by means of a chute extending from an ice conveyor within the building. It was the custom of the deceased to notify the employee working inside the building when he desired ice sent out, by tapping on a steel partition between the platform and the storage room, tapping once for each cake of ice required. The sales averaged from $150 to $160 per day. About twenty-five per cent of these sales would be made for cash. His work usually ended at four o'clock in the afternoon. Shortly after four o'clock on May 9, 1921, while he was still engaged in his employment, he was shot by some unknown person and died a short time thereafter. There were no witnesses to the shooting. Connelly died without making a statement concerning the assault. Charles Quigless testified that he was working inside the building; that he heard a shot which he at the time thought was a rap on the partition for ice; that he started for the ice conveyor and saw the deceased standing in the doorway; that he told the witness that he had been shot and asked him to get a doctor; that when witness returned from telephoning for the doctor and to plaintiff in error's office deceased was unconscious and died without regaining consciousness. Two boys testified that they heard the shot and saw two men running from the premises, one of the boys testifying that he saw one of the men put a pistol in his pocket as he

ran. The keys to plaintiff in error's premises were found on the body of the deceased, together with his report, made out, of the day's sales, showing cash received amounting to $37, which sum of money was found on his person, as was $193.50 of his own money. Nothing appears to have been missing from his person.

No case on all-fours with this appears to have been previously decided by this court. The rule is that an accident, to be within the Workmen's Compensation act, must originate in some risk of the employment. (*Taylor Coal Co.* v. *Industrial Com.* 301 Ill. 548; *Porter Co.* v. *Industrial Com.* 301 id. 76; *Edelweiss Gardens* v. *Industrial Com.* 290 id. 459.) It is incumbent upon the complainant to prove by a preponderance of competent evidence that the injury arose not only in the course of the employment but likewise out of the employment. (*Chicago Daily News Co.* v. *Industrial Com.* 306 Ill. 212; *Ohio Building Vault Co.* v. *Industrial Board,* 277 id. 96.) Under these rules it is incumbent upon the applicant to prove some causal connection between the employment and the death of the deceased.

It is not contended by plaintiff in error that the injury causing the death of the deceased did not arise in the course of his employment but that there is no evidence that it arose out of his employment. Defendant in error contends that the only reasonable inference to be drawn from the evidence is that the killing was in furtherance of a plan to rob the deceased of the plaintiff in error's money, and that therefore his death arose out of his employment. The argument is, that since it is shown by the evidence that the deceased was a sensible man and of peaceable disposition; that he was not shown to have personal enemies; that he was regular and steady in his employment, and that the attack was made after four o'clock, by which time the business of the day was usually closed and the total of the day's receipts in possession of the deceased, such evidence raises a reasonable inference that the purpose of the assault was to

rob him of his employer's funds and precludes the inference that it was to rob him of his own funds, since such a purpose might be more safely carried out at another time and place; that there is nothing in the evidence which tends to establish that he was shot by an enemy or by accident, and whether shot in an attempt to rob him of the plaintiff in error's funds or through an altercation with one of plaintiff in error's customers, liability for compensation would ensue.

While it might be said that such an inference is equally reasonable with an inference that the killing was by a personal enemy, there is no evidence in the record whatever that the killing was in pursuance of an attempt to rob the deceased either of his own funds or the funds of the company or that it occurred in an altercation with a customer. The fact that nothing was taken from his body would tend to rebut such an inference. Counsel urge that doubtless the failure to secure any money was due to the fact that immediately after the shot was fired the deceased called out to Quigless and that the robbers were frightened away. If there was any evidence whatever of robbery, such an inference might be drawn therefrom. Inferences, however, must be based on some evidence. While evidence of robbery might reasonably give rise to an inference of flight before accomplishment, due to alarm, yet flight does not, of itself, afford an inference that the motive of the killing was robbery of the employer's funds or that it occurred in an altercation with a customer. The record is barren of any evidence from which it might be concluded that the robbery theory is the more reasonable. The commission can not choose between theories or conjectures. There must be evidence upon which to base an award. The record here does not afford such evidence and the commission was not justified in making an award. The court cannot sustain an award based not on evidence but upon theory, conjecture or unsupported inference. (*Peterson & Co.* v. *In-*

*dustrial Board,* 281 Ill. 326; *Ohio Building Vault Co.* v.
*Industrial Board, supra; Swift & Co.* v. *Industrial Com.*
302 Ill. 38; *Decatur Construction Co.* v. *Industrial Com.*
296 id. 290; *Perkinson* v. *Industrial Com.* 305 id. 625;
*Springfield District Coal Co.* v. *Industrial Com.* 303 id. 528;
*Ideal Fuel Co.* v. *Industrial Com.* 298 id. 463.) Where
the weight of the evidence supports the inference that the
injury arose in the course of and out of the employment
the award will be sustained. Of this character are the
watchmen cases and others cited by counsel for the de-
fense. We are of the opinion there is no such evidence in
the record.

The only case which has been called to our attention
which is similar on the facts in this particular is that of
*Schmoll* v. *Weisbrod & Hess Brewing Co.* 89 N. J. L. 160.
In that case the employee made deliveries of beer and col-
lected therefor. On the date of the injury he had delivered
beer at a dwelling house, and while returning from the
house to his wagon was assaulted and shot by some un-
known person. After the injury he returned to the brew-
ery and accounted to his employer for the money collected
and entrusted to him and then went to the hospital, where
he later died from the effects of the wound. The trial court
held that as the territory in which the employee was work-
ing at the time he was injured was known to the police as
one in which attempts at murder were more frequent than
in any other part of the city, the deceased was subjected
to an extraordinary risk in connection with said employ-
ment and an award of compensation was justified. The
court of review reversed the judgment on two grounds:
First, that the character of the place where the attack was
made was of no particular significance, as it did not appear
that the employer of the deceased had any notice of the
danger of the locality; and second, that the evidence did
not disclose that the attack made on the deceased was for
the purpose of robbery, the court saying: "In the present

case the testimony utterly fails to show any motive for the attack upon the deceased. The assailant of the deceased was unknown. His motive in making the attack was also unknown. No robbery or attempt at robbery was shown. The person who shot the deceased might have shot him out of revenge for some fancied wrong, or by mistake, or by accident. There was no proven fact or circumstance before the court below that connected the shooting, either directly or indirectly, with the employment of the deceased, either as driver or collector." As in that case, it also appears here that the testimony fails to show any motive for the attack upon the deceased. There is no evidence connecting the shooting, either directly or indirectly, with his employment.

In *Mechanics Furniture Co.* v. *Industrial Board,* 281 Ill. 530, where a night watchman was found shot while on duty, the award was sustained for the reason that it was shown that it was the duty of the deceased to keep loiterers out of the premises, it appearing that deceased was killed on the premises.

In *Ohio Building Vault Co.* v. *Industrial Board, supra,* the night watchman was found badly injured while on duty. The keys to the building were missing, as well as the money and watch of the deceased. Certain doors of the building were found unlocked. These doors were usually kept locked. The award in that case was sustained on the ground that the evidence tended to prove that the assault was made on the deceased because he was a night watchman, engaged at the time in his line of duty. In the present case it was not the business of the deceased to keep loiterers from the premises, and there was no evidence which tended to show that his death arose out of his duties.

For the reasons here given, the judgment of the circuit court is reversed.

*Judgment reversed.*