R. Y. AUMAN v. BRECKENRIDGE TELEPHONE COMPANY AND ANOTHER.[1]

February 17, 1933.

No. 29,307.

[1]Reported in 246 N. W. 889.

*Lewis E. Jones,* for relator.

*L. N. Foster* and *E. A. Linnee,* for respondents.

HOLT, JUSTICE.

Certiorari to review a decision of the industrial commission denying relator compensation.

The findings of the referee were in all things adopted by the commission. The pivotal finding is this:

"That while so employed said employe suffered an accidental injury to his person, but that the accident which occasioned this injury did not arise out of his employment with the above named employer."

This finding is challenged as not justified by the evidence and contrary to law.

The facts are not in dispute. Relator was employed as manager and wire chief of respondent Breckenridge Telephone Company at Breckenridge on January 11, 1932, and had been so employed for some time prior thereto. He was the only employe of the company at that place, and had to do both office work and such pole and wire work as was necessary to keep the lines in working order. On the date mentioned relator had been out in the afternoon and repaired the poor farm line, using the company's service car. He returned at about 4:30 and drove the car into the company's garage in the rear of its office building. There is a vacant lot on the north side of the lot, upon which is the company's garage and office building. After closing the doors of the garage relator started to go to the front of the office building, there being no rear entrance. The usual way was to go from the garage door to the vacant lot and

over that lot to the front of the office building. When relator had covered a third of the distance from the garage door to the vacant lot he was struck by a bullet, which lodged in his neck close to the spine, partially disabling him. It appears that the bullet came from a gun fired by a boy who was then in an apartment north of the vacant lot mentioned. There is no evidence that the bullet was fired with any intention to hit anyone or to harm relator. The boy was not prosecuted. He was not called as a witness in this proceeding. As the evidence is left it cannot be assumed that any unfriendly feeling existed between the boy and relator. The impression is rather that the gun was accidentally discharged.

Our workmen's compensation act was not designed to give compensation for every disability caused by accidental injury to the employe. It does not make the employer an insurer against all accidents that might befall an employe in his employment. It is only personal injury or death of an employe "caused by accident, arising out of and in the course of the employment," that is compensable. G. S. 1923 (1 Mason, 1927) § 4269. There is no question that the injury was suffered by relator during his hours of service, upon the premises of the employer where his presence was required. So it befell him in the course of his employment. But our statute, in common with many other workmen's compensation acts, restricts compensation to injuries caused by accidents which "arise out of" the employment. The commission has found that relator's injury was not caused by an accident which arose out of the employment. Do the facts above recited, and undisputed, compel an inference or finding that it did rise out of the employment? We are aware of the tendency of courts of late to give a very liberal construction in favor of the employe to the words "arising out of" the employment. Globe Ind. Co. v. MacKendree, 39 Ga. App. 58, 146 S. E. 46 (affirmed 169 Ga. 510, 150 S. E. 849) ; Ridenour v. Lewis, 121 Neb. 823, 238 N. W. 745, annotated in 80 A. L. R. 119. But some connection must be found between the employment and the accident so that the latter may with some reason be said to arise out of the former. Of an employer who would set a crew of men

to work in deer territory during the open season it could readily be found that an injury caused by a stray bullet arose out of the employment. But it is quite different to say that an employment such as was relator's, in an open country district including a small city or village, gives rise to the hazard of injury from the accidental discharge of a gun other or different from what any other person within the same territory must face. Relator cites McNicol's Case, 215 Mass. 497, 499, 102 N. E. 697, L. R. A. 1916A, 306, which defines the term "arising out of" the employment. But plainly the undisputed facts do not bring relator within that definition, which is that the injury arises out of the employment

"when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as the result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood."

Relator cannot come in under the so-called street risks, for he was not in the street when struck by the bullet, but upon the premises of the employer. It was the same as if he had been in the office of the employer. There have been cases where the employe, who in the course of his duties is required to travel over streets and highways, has been awarded compensation under the act for accidentally being shot. But the theory has been that, since the employment required the employe's presence upon public streets and highways, the hazards connected with being thereon may be said to arise out of the employment. Thus a salesman traveling by automobile encounters the risk of being stopped by officers with fire-

arms. Wold v. Chevrolet Motor Co. 147 Minn. 17, 179 N. W. 219. See also Frigidaire Corp. v. Ind. Acc. Comm. 103 Cal. App. 27, 283 P. 974 (hearing denied by supreme court) where the employe, whose duties required him to travel, was injured, while at the station to take a train, by a bullet fired by a police officer in pursuit of a criminal upon an adjacent street, and was awarded compensation. The same was the result in Greenberg v. Voit, 250 N. Y. 543, 166 N. E. 318, where the employe, in the act of sweeping in front of the employer's building, was killed by gangsters passing along the street, shooting indiscriminately. These accidents, and others where compensation has been awarded to servants whose services required them to be upon streets and public highways, are attributed to the risks and hazards originating upon or connected with the use of public streets. Katz v. Kadans & Co. 232 N. Y. 420, 134 N. E. 330, 23 A. L. R. 401. They do not relate to accidents or incidents which neither originate upon nor are referable to the use of public ways.

In the instant case the gun was not fired from the street, but from a private apartment. It did not even pass across a public street. Nor was relator hit or injured when traveling a public street in performance of his duties. Neither can it be said that accidents from stray bullets or accidentally discharged guns do arise out of any ordinary employment carried on in an orderly community. Some force and meaning must be given to the expression "personal injury * * * caused by accident arising out of" the employment. "Arising out of" are words of limitation. The accident must be caused by some risk inhering in or incident to the employment as distinguished from a risk or hazard to which all are equally exposed.

In State ex rel. Peoples C. & I. Co. v. District Court, 129 Minn. 502, 153 N. W. 119, L. R. A. 1916A, 344, a finding that an employe, struck by lightning in the street while engaged in delivering ice, was killed in an accident arising out of his employment was sustained. Lightning cases are there reviewed and the conclusion reached that [129 Minn. 503]:

"If the deceased was exposed to injury from lightning by reason of his employment, something more than the normal risk to which all are subject, if his employment necessarily accentuated the natural hazard from lightning, and the accident was natural to the employment, though unexpected or unusual, then a finding is sustained that the accident from lightning was one 'arising out of employment.' An injury, to come within the compensation act, need not be an anticipated one; nor, in general, need it be one peculiar to the particular employment in which he is engaged at the time."

Cases from other jurisdictions are discussed, and the subject is left to the commission to find whether or not the employment is such as to expose an employe to the danger of lightning more than people otherwise occupied. There is quite a similarity between lightning and stray bullets when tracing a causal connection to any employment. And in order for an employe to be awarded compensation from his employer for disability caused by the accidental discharge of a gun he must prove that one in the employment is more likely to be injured from such a source than those who are not. Usually the question of whether the accident which caused the injury "arose out of" the employment is one of fact. Here that question has been resolved against relator and must stand, unless the facts above stated and as to which there is no controversy compel an inference to the contrary. In our opinion they do not.

The writ is discharged, and the decision stands affirmed.