## ANNA COOPER v. RAY J. MITCHELL AND ANOTHER.[1]

April 7, 1933.

No. 29,312.

*Smith, Callahan & Carlson,* for relator.

*Robb, Rich & Frohne,* for employer and Metropolitan Casualty Insurance Company, his insurer, respondents.

[1]Reported in 247 N. W. 805.

HILTON, JUSTICE.

Certiorari upon the relation of employe to review the decision of the industrial commission disallowing further compensation.

On November 6, 1929, relator, aged 47 years, was and had been for five years employed in the bakery of Ray J. Mitchell. On that date, due to an explosion in the basement furnace room and fire therefrom coming through a floor register, she was burned about her nose, face, and elbow and became unconscious for several hours. She sustained serious injuries and was confined to a hospital for some time. Compensation at the required rate was paid her until April 1, 1931, amounting to $864, and for hospitalization and physicians' services $1,247.83. Relator was represented at the hearings by two able and competent counsel. The commission found:

"That as a result of said accident the employe became temporarily totally disabled and continued to be so temporarily totally disabled from November 6, 1929, and until April 1, 1931, * * *. That at the time of said hearing said employe did not suffer from any ailment caused or aggravated by, or in any way attributable to said accidental injury."

The important question is whether or not an exophthalmic goiter, with which relator was suffering when and after compensation ceased, was caused by or resulted from the accident. Relator's theory was that the goiter was caused by a trauma at the time of the accident, and the case was tried on that issue. Although frequent examinations were made, the goiter was not discovered until February, 1931 (more than a year and three months after the accident), and then by the insurer's physician. Relator's attending physician, who had been caring for her for more than a year before the discovery, stated that it probably commenced four months before it was discovered by anyone. Two physicians for the insurer stated that a goiter caused by trauma would develop in a few weeks. The attending physician placed the time as usually within a few weeks, but stated that there are latent cases in which "the frank showing of exophthalmic goiter does not appear until very

much later." One of relator's physicians testified that in the average case where there is a latent thyroid some manifestation of it would appear within a week or two after a trauma. The testimony of two physicians was that the goiter condition did not result from the effects of the accident.

Relator's ailment, other than burns, was diagnosed as a gastric ulcer and perhaps a cancer of the stomach. She was treated therefor, and by June, 1930, that condition was cleared up to such an extent that she was only required to be careful of her diet. An X-ray taken in March, 1931, showed that the ulcer had entirely healed. Relator's attending physician gave as his opinion, based on that X-ray picture, that the ulcer was probably healed in September, 1930. Relator's condition had continued to improve steadily until September, 1930, when she suffered a setback occasioned by a heat prostration while attempting to do her housework during the then existing extremely hot weather. The attending physician testified that during the period from December, 1929, when he first saw relator, up to December, 1930, he did not notice any symptoms of thyroid trouble and did not suspect the presence of a goiter until February 26, 1931. During the period from December, 1930, to February 26, 1931, he diagnosed her then trouble as peritonitis and treated her accordingly.

■ The commission had before it the reports of various physicians and hospitals. It also had the testimony of relator and other lay witnesses and the testimony of four doctors (two for each party). A detailed statement of that evidence is not necessary. It is sufficient to say that, in so far as some of the physical conditions during the time since the accident are concerned, the evidence was somewhat in dispute. The same is true as regards certain other important medical opinions given by the respective physicians. There was sufficient evidence to justify the findings of the commission. This is clearly a case where the findings of the industrial commission are not manifestly contrary to the evidence. Its findings cannot be disturbed, because the evidence and the inferences permissible therefrom do not require reasonable minds to

adopt a contrary conclusion. There was sufficient evidence supporting the negative finding of the industrial commission. Jones v. Excelsior Laundry Co. 183 Minn. 531, 237 N. W. 419; Klugman v. Central Hanover B. & T. Co. 183 Minn. 541, 237 N. W. 420; 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 10426.

■ G. S. 1923 (1 Mason, 1927) § 4283(2), provides:

"In case of dispute as to the injury, the Industrial Commission, * * * may, upon its * * * own motion, * * * designate a neutral physician of good standing and ability to make an examination of the injured person and report his findings to the Industrial Commission, * * *. A copy of the signed certificate of such neutral physician shall be mailed to the parties in interest and either party within five days from date of mailing may demand that such physician be produced for purpose of cross-examination. Such signed certificate of a neutral physician shall be competent evidence of the facts stated therein. * * *"

On June 3, 1932, the commission on its own motion appointed two neutral physicians. The order of appointment provided in part that the neutral physicians should make an examination of the transcript of testimony and medical reports, with particular reference to the causal connection, if any, between employe's present condition, as found from said transcript of testimony and medical reports, and the accidental injury, and report in writing their findings to the commission. This order was served on the attorneys of the respective parties. No one made any objection to the order or to the procedure adopted. On June 14, 1932, the neutral physicians filed a comprehensive detailed report in which it was given as their opinion "that as far as the goiter is concerned it is very doubtful that the accident in 1929 has any direct bearing on her present ailment." On June 15 a copy of the report was served as the order had been. No objection was made or exception taken thereto. On July 11, 1932, the commission made its final decision.

The contention of relator now, made by new counsel, is that the procedure taken by the commission relative to neutral physicians was not in compliance with the statute; that it was not authorized

to have the neutral physicians simply examine the transcript of the oral and documentary evidence or to examine the transcript at all; that all that the neutral physicians could do was to examine relator physically and inquire of her relative to facts incident to the accident and her condition since then. Be that as it may, relator cannot here take advantage of the situation. The rule on an appeal from the result of an action tried to a court or a jury is that a party cannot take advantage of any objection to the admission of evidence which he did not clearly and specifically raise on the trial. 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 9728. There is no reason why the same rule should not apply to this proceeding before the industrial commission. The complaining party was represented by counsel; the procedure was not objected to; the report of the neutral physicians was known nearly 30 days before the commission made its decision; no objection of any kind was made, nor was the opportunity to cross-examine availed of. A party cannot thus fail to act, awaiting the result of the hearing, and, if the same is adverse, then object thereto. The industrial commission as well as a trial court and a prevailing litigant should be protected from the consequences of having the result of a trial or a hearing thus set aside and brought to naught.

■ The commission is not bound by strict rules of evidence, but its findings of fact shall be based only upon competent evidence. G. S. 1923 (1 Mason, 1927) § 4313. Even if the report of the neutral physicians was incompetent evidence, the result of this appeal must be the same. A decision of the commission will not be disturbed because incompetent evidence may have been admitted.

"The hearings before the commission and its referees are rather informal and of a summary character, and are not subject to the rules of evidence which govern proceedings in court. * * * If their conclusions are supported by sufficient competent evidence, they will not be disturbed for the reason that incompetent evidence may have been received." McDaniel v. City of Benson, 167 Minn. 407, 408, 209 N. W. 26; Walker v. Minnesota Steel Co. 167 Minn. 475, 209 N. W. 635; 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 10421.

There was sufficient competent evidence to sustain the commission's findings.

■ A motion was made by the new counsel for relator asking to have a rehearing on the ground of newly discovered evidence. This was denied. The motion was supported by three affidavits. One was that of Dr. Williams, the physician who attended relator on the day of the accident and for about six weeks immediately thereafter. It was to the effect that during that period relator was extremely nervous and suffered from severe headaches; that having subsequently learned of the diagnosis of an exophthalmic goiter it was his opinion that the symptoms which he found during the period of time that she was under his professional care were those of a developing goiter, and that the goiter was due to the accident. The affidavit of relator's son recited that he knew that his mother worried a great deal over her condition after the accident; that the worry became greater when she realized that she would not be able to return to her work; that she suffered terribly from the heat and had a relapse; that her worry over her situation became very marked. The son was a witness at the hearings. The third affidavit is by the physician who is hereinbefore referred to as the attending physician. He also was a witness at the hearings.

Whether an employe after an award is entitled to a rehearing under G. S. 1923 (1 Mason, 1927) § 4319, rests in the discretion of the industrial commission. Unless there has been a clear abuse of discretion, this court cannot disturb the order of the commission. Ogrosky v. Commonwealth Elec. Co. 172 Minn. 46, 214 N. W. 765, and cases cited. See 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 10421. There was no such abuse of discretion here. The affidavits of the attending physician and the son were merely cumulative and corroborative of what was already in the case, as was also that of Dr. Williams, except possibly in so far as it related to a different period of time than that of the testifying physicians. However, at the original hearings an adjournment until the next morning was granted to allow relator time to secure the attendance of Dr. Williams. When the proceedings were resumed counsel for relator

stated that they did not propose to call that physician. Relator herself testified that from the time of the accident she suffered severe headaches and extreme nervousness, although reports and testimony of physicians showed that for some time before the heat prostration in September, 1930, her pulse and temperature were normal, and one physician testified that at an examination in February, 1930, there was no tremor and no manifestation of nervousness. Relator had an opportunity to present all the evidence at the time of the hearing. She had her day in court. Under the circumstances it was not an abuse of discretion to hold that that was sufficient. Smith v. Independent Silo Co. 169 Minn. 96, 210 N. W. 624.

Affirmed.

OLSEN, JUSTICE, took no part.