## J. J. HOWLETT v. MIDWEST DISTRIBUTORS, INC. AND ANOTHER.[1]

February 18, 1938.

No. 31,568.

[1]Reported in 277 N. W. 913.

*Reynolds & McLeod,* for relators.
*Gleason & Ward* and *G. E. Sveeggen,* for respondent.

JULIUS J. OLSON, JUSTICE.

*Certiorari* brings for review an order of the industrial commission granting employe compensation. We shall refer to him as petitioner and to his employer as Midwest.

The matter was first heard before a referee of the commission, who made findings and an order granting petitioner's prayer for relief. Midwest and its insurer appealed to the commission, where the findings and order were sustained.

The record justifies finding the following facts: In March, 1935, petitioner entered into a Minnesota contract of employment with Midwest. Both were then domiciled in Minneapolis. Petitioner's territory was not definitely defined. He had a "roving commission," and his duties took him over large portions of the west central areas of the United States. In addition to his weekly salary, he was allowed a per diem of five dollars subsistence expense and five cents per mile for the use of his automobile. In November of that year Midwest moved its headquarters from Minneapolis to Greenwich, Connecticut. But petitioner's immediate superior, one Haig, and his assistant Holshue, continued to act for Midwest as theretofore, and petitioner received his instructions from them.

On January 30, 1936, petitioner wrote Mr. Haig at Greenwich reminding him of a personal conversation had at Detroit, Michigan, a short time prior thereto, to the effect that Midwest would pay petitioner's traveling expenses for occasional trips from the territory he was then covering to his home in Minneapolis. In response to this letter, Holshue, for Midwest, wired petitioner on February 3 as follows: "After completing Chicago go direct to Minneapolis via train. Further instructions will be sent you there at your home

address. Spend some time with Hoagland." The letter mentioned in the telegram, signed by Mr. Holshue, and received by petitioner when he reached Minneapolis, read in part as follows:

"We would like to be able to tell you that it would be satisfactory for you to return to your home in Minneapolis every three weeks or so. Unfortunately we could not conscientiously authorize this expenditure. Your territory, as finally defined, will consist of Ohio, Michigan, Indiana, as well as parts of border states. It would, therefore, be advisable for you to move your family to some centrally located point in this section, and it is our suggestion that you do so."

Petitioner testified that he returned to his home in Minneapolis several times between the time Midwest moved its headquarters to Greenwich and the date when he received the letter from which above mentioned quotation is made; that his per diem expenses and car mileage for all such trips were paid by Midwest. After the receipt of the letter of February 3, it appears that petitioner did not intend to comply with that part of it which suggested the removal of his family from Minneapolis and the establishment of headquarters at or near the territory referred to in the letter. Instead, petitioner began negotiations with another company. On April 14 he wrote Midwest from Minneapolis just before leaving for Sandusky, Ohio, that he desired to discontinue his services at the earliest convenience of Midwest, not later, however, than April 30, next following. On April 16 Midwest wired him as follows:

"Your resignation accepted and you are relieved effective today. As you will undoubtedly return to Minneapolis immediately please turn your files, supplies and company property over to Ed Miller at 3231 Girard Ave. North. Where can we address you from now on?"

Upon receipt of this telegram petitioner completed his day's work and made his report, and on the next day proceeded to Minneapolis in his automobile. While on this trip he suffered the injury for which he later brought these proceedings to recover compensation, it being his claim, sustained by the referee and the commission, that

the injuries were accidental and arose out of and in the course of his employment.

For Midwest it is claimed that petitioner was through the moment he finished his work on April 16 and mailed his report; that his return trip from Toledo to Minneapolis was his own affair; that he owed no further duty to his employer; that transporting the files and supplies of the company in his car was merely an incident to his own trip to Minneapolis; that the bringing of the mentioned items and turning over to Midwest's agent, Miller, at Minneapolis, was only "an accommodation request."

We think the record is such that the triers of fact could find, as they did, that when the parties entered into their agreement in March, 1935, both contemplated their headquarters would be and remain in Minneapolis; that when the main office of the company was moved from Minneapolis to Greenwich, judging from what later happened, Midwest desired to have petitioner's headquarters changed to some undetermined location in or near the new area assigned to him. The correspondence does not indicate nor does the subsequent conduct of the parties establish that this change was to be an immediate one. The triers of fact could well find that changing petitioner's domicile was still a matter of uncertainty— in a state of negotiation. Unquestionably Midwest and its officers realized that changing of family home to a new location several hundred miles distant would necessarily require some little time. Hence it was permissible for the triers of fact to conclude, as they did, that petitioner's employment continued until he reached the place of his abode from which he had theretofore started on his work and to which he was accustomed to return. His testimony is that his expenses had been met by Midwest on all trips made from the newly assigned territory to Minneapolis up to the date of the accident. When he mailed his report from Toledo on April 16, he of course included nothing for the expense of driving his car to Minneapolis.

If Midwest had not changed its headquarters to Greenwich but had retained same at Minneapolis, it seems to us that the triers of fact could very properly conclude that petitioner's trip thereto was

a necessary part of his engagement, a portion of his contract of employment and properly within it. If under such circumstances he had suffered the present injury, no one would seriously contend that this trip was beyond his employment and, as such, not compensable. We think the question was one of fact for the commission to decide and that its conclusion is sustained by the record.

The basis upon which the commission permitted recovery may be summarized in the language chosen by them, as follows:

"When the employer's business requires an employe to travel in a specified territory, it is the duty of the employer to afford the employe an opportunity of returning from the territory under the employer's protection. A traveling employe is in the course of his employment on the return trip from his territory as well as on the outward trip."

And that in substance was the holding in Wilhelm v. Angell, Wilhelm & Shreve, 252 Mich. 648, 653, 234 N. W. 433, 435, where the court said:

"There are also numerous cases holding when an employee in the discharge of his duties is required to go upon the highway he continues under the protection of the compensation act while on the homeward portion of his journey." (Citing many cases.)

Such also is the holding in Kelling v. Froemming Bros. Inc. 287 Pa. 471, 474, 135 A. 129, 130:

"It was not only necessary for him to drive to the towns suggested by his employer, but also that he return home. His employment and duties, consequently, continued without interruption from the time he left camp until his return, unless direct evidence is produced to show his errand had been completed and he was not on his return trip but traveling on a mission of his own not connected with his employment."

In this connection it is interesting to note that when petitioner made his former trip to Minneapolis, pursuant to letter and telegram of February 3, on his trip back to the newly designated territory he was instructed to work such towns as Eau Claire, Madison,

Janesville, and Beloit, in Wisconsin, thus indicating that he was not to be idle. Under such circumstances, if he had been injured while on that trip, Midwest could not contend that it was relieved of responsibility in the event of his accidental injury. For the same reason, we think the commission could find that the shelter and protection of the workmen's compensation law continued until he returned to the place from which he started and to which he was accustomed to go at stated intervals.

In principle we think our own cases point in the same general direction. State ex rel. Chambers v. District Court, 139 Minn. 205, 166 N. W. 185, 3 A. L. R. 1347; State ex rel. McCarthy Bros. Co. v. District Court, 141 Minn. 61, 169 N. W. 274.

The writ is discharged and order affirmed. Petitioner is allowed $75 attorney's fees plus statutory costs and disbursements.

MR. JUSTICE STONE, because of illness, took no part in the consideration or decision of this case.

[1]Reported in 277 N. W. 926.