## ALICE L. CORCORAN v. TEAMSTERS & CHAUFFEURS JOINT COUNCIL NO. 32 AND ANOTHER.[1]

January 24, 1941.

No. 32,558.

[1]Reported in 297 N. W. 4.

*Sexton, Mordaunt, Kennedy & Carroll,* for relators.
*John A. Goldie* and *Gilbert E. Carlson,* for respondent.

GALLAGHER, CHIEF JUSTICE.

*Certiorari* to review an order of the industrial commission awarding compensation to the dependents of P. J. Corcoran, a former employe of Teamsters & Chauffeurs Joint Council No. 32, a labor organization.

The claim petition alleges that Corcoran died November 17, 1937, as a result of injuries arising out of and in the course of his employment. The answer admits the employment and death but denies that the injuries arose out of and in the course of such employment. The referee found for petitioner. The commission affirmed, one commissioner dissenting.

Relators contend that the findings and award of the commission are (1) not sustained by the evidence and (2) are based upon incompetent evidence.

Prior to his death, Corcoran resided at 28 Penn avenue in the city of Minneapolis. He was secretary and treasurer of Teamsters & Chauffeurs Joint Council No. 32, with which are affiliated a number of local unions. All of these unions are members of the International Brotherhood of Teamsters and Teamsters Helpers. He was also vice-president of the Minnesota Federation of Labor and a director of the Minneapolis Labor Temple. He had previously been secretary and treasurer of the Teamsters Joint Council

and secretary of the Milk Drivers Union. We mention these associations for the purpose of showing his labor background.

Corcoran was furnished an automobile, owned and maintained by his employer. He kept it in a garage at his home and used it in connection with his work and in driving to and from his home. His main duties were to help affiliate unions, to assist them in organizing, and to prepare and negotiate labor contracts.

On the day of his death Corcoran worked at the office of his employer until about 7:00 p. m. in preparation for a trip to Indianapolis the next day. He then attended a meeting at the union hall, 257 Plymouth avenue, where he assisted in drafting a labor contract. This meeting adjourned about 9:30 p. m. He left the hall about 10:00 p. m. The witness Dobbs, with whom decedent talked as he left the union hall, testified that upon his return home that evening Corcoran was to make a general outline of the matters to be presented by the two when they arrived at Indianapolis the following day for a conference at the headquarters of the International Union.

Corcoran's body was discovered shortly before midnight on a lot at 28 Penn avenue about 80 feet from his garage. The car was in the garage. His portfolio containing his papers was found on the ground near his body. He had in his pockets $81.10. When a police officer arrived shortly after midnight in response to a call "that there was a man down" at the above place, his body was covered with snow. There were no tracks in the snow and no snow on the car. A coroner's jury found that Corcoran came to his death by reason of gunshot wounds of the head inflicted by a person or persons unknown.

The only issue in the case is whether death was caused by an accident "arising out of and in the course of the employment." Our task is to determine whether the record contains sufficient competent evidence to sustain the commission's findings that it was.

1 Mason Minn. St. 1927, § 4326(j), provides:

"Without otherwise affecting either the meaning or interpretation of the abridged clause 'personal injuries arising out of and in the course of employment,' it is hereby declared:

"Not to cover workmen except while engaged in, on, or about the premises where their services are being performed, or where their services require their presence as a part of such service, at the time of the injury, and during the hours of service as such workmen; * * * but shall not include an injury caused by the act of a third person or fellow employe intended to injure the employe because of reasons personal to him, and not directed against him as an employe, or because of his employment."

This court has never attempted to define with exactness what is meant by the phrase "accidental injury arising out of and in the course of employment." In Harris v. Kaul, 149 Minn. 428, 430, 183 N. W. 828, 829, in referring to the matter it was said:

"It is doubtful whether anything can be said that would help to make clearer the meaning of the language used in the statute. The phrase occurs not only in our own act but in the English act and the acts of many of the states as well. It has been said of it, that it admits of an inexhaustible variety of application according to the nature of the employment and the character of the facts proved."

In Novack v. Montgomery Ward & Co. 158 Minn. 495, 198 N. W. 290, 292, former Chief Justice Wilson pointed out the distinction between the phrases "in the course of employment" and "arising out of the employment." That case furnishes some guidance in solving the question before us. We quote from the opinion (158 Minn. 498):

"The injury is received 'in the course of' the employment when it comes while the employe is doing his work. It may be received 'in the course of the employment' and still have no causal connection with it. State ex rel. v. District Court, 129 Minn. 176, 151 N. W. 912. 'In the course of' refers to the time, place and

circumstances under which the accident takes place. It may be 'in the course of the employment' and yet the employe may be standing still and not physically moving in his work. Kaletha v. Hall Mercantile Co. 157 Minn. 290, 196 N. W. 261. He is still included when he does those reasonable things which his contract with his employment expressly or impliedly permits him to do. It 'arises out of' the employment when it reasonably appears from all the facts and circumstances, that there is a causal connection between the conditions which the employer puts about the employe and the resulting injury. If the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. It excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the employe would have been equally exposed apart from the employment. The moving cause of danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business of the employer and not independent of the relation of employment. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence. Good illustrations are found in State ex rel. Anseth v. District Court, 134 Minn. 16, 158 N. W. 713, L. R. A. 1916F, 957; Mahowald v. Thompson-Starrett Co. 134 Minn. 113, 158 N. W. 913, 159 N. W. 565; Kaletha v. Hall Mercantile Co. 157 Minn. 290, 196 N. W. 261; State ex rel. McCarthy Bros. Co. v. District Court, 141 Minn. 61, 169 N. W. 274."

Bearing upon the question whether Corcoran was killed while "in the course of his employment," testimony was admitted that his hours were unlimited and that he was subject to call any time during the day or night. His business card bore his house telephone number, and he often received calls at his home, sometimes

as late as one or two o'clock in the morning. His activities were not confined to the place of business of his employer although a part of his work was performed in the company's office, where he had the aid of a secretary. He attended conferences and meetings in the union hall and negotiated with employers and employes at various places in Minneapolis and St. Paul and at other points throughout the state. At times he made trips on his employer's business outside of the state. He worked long hours, often until midnight and usually on Sunday. Some of his work was done at his home, such as that which the witness Dobbs testified he planned to do on his arrival home the night of his death.

The circumstances of Corcoran's death indicate that shortly before he was murdered he put his employer's car in the garage on the rear of his lot, the usual place for housing it. At the time of the assault he was carrying a portfolio containing his employer's papers which he was to take with him to Indianapolis the following day. Most of the incidents referred to are undisputed. They relate to the time, place, and circumstances of Corcoran's death and furnish a substantial basis for the commission's finding that he was engaged "in the course of his employment" when attacked. Novack v. Montgomery Ward & Co. 158 Minn. 495, 198 N. W. 290; State ex rel. Miller v. District Court, 138 Minn. 326, 164 N. W. 1012, L. R. A. 1918F, 881; State ex rel. Duluth Brg. & Malting Co. v. District Court, 129 Minn. 176, 151 N. W. 912; Howlett v. Midwest Distributors, Inc. 202 Minn. 247, 277 N. W. 913; Kelling v. Froemming Bros. Inc. 287 Pa. 471, 135 A. 129.

Whether Corcoran's injuries "arose out of his employment" is a more difficult question. There is no direct proof that they did. If the commission's finding on that question is to be sustained it must be from the inferences that might reasonably be drawn from the competent proof received on the subject. Black's Law Dictionary (3 ed.) p. 958, defines "inference" as follows:

"A truth or proposition drawn from another which is supposed or admitted to be true. A process of reasoning by which a fact or proposition sought to be established is deduced as a logical

consequence from other facts, or a state of facts, already proved or admitted. Gates v. Hughes, 44 Wis. 332, 336; Whitehouse v. Bolster, 95 Me. 458, 50 A. 240; Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059."

See also Bouvier, Law Dictionary (Rawle's Rev.) p. 1031, and 21 Wd. & Phr. (Perm. ed.) 268, at p. 273:

"When we say that a certain 'inference' is warranted by certain facts proved, we mean no more than that [the] jury is reasonably warranted in making that deduction from those facts, under Code Civ. Proc. § 1958. Maupin v. Solomon, 183 P. 198, 199, 41 Cal. App. 323."

And at p. 274:

"Industrial Commission's province is to decide compensation case upon evidence and reasonable 'inferences' to be drawn therefrom. In drawing inferences from the evidence, where there is no positive proof that death or injury of employee was occasioned as result of accident suffered during the course of his employment, the inferences must be reasonable, such as can legitimately and properly be drawn from proven facts; the term 'inferences' as used in this connection not meaning guesswork. Conreaux v. Industrial Commission, 188 N. E. 457, 460, 354 Ill. 456."

To the same effect are State v. Jones, 39 N. M. 395, 48 P. (2d) 403; Whitehouse v. Bolster, 95 Me. 458, 50 A. 240; Wright v. Conway, 34 Wyo. 1, 241 P. 369, 242 P. 1107; Clapp's Parking Station v. Industrial Acc. Comm. 51 Cal. App. 624, 197 P. 369.

In an effort to prove a causal connection between Corcoran's employment and the injuries from which he died, respondent offered evidence, some of which was received over relator's objection as to its competency, tending to show that the employment in which Corcoran was engaged subjected him to greater hazard than that to which the general public in the community was subjected. This evidence covered a wide range. Several union employes testified to threats made against Corcoran if he persisted in his unionization efforts. There was some evidence "of actual

violence." There was testimony that other organizers, including decedent's successor, had been threatened and assaulted because of their employment.

A fact to be proved here is the extrahazardous character of Corcoran's employment. Statements threatening his personal safety and others employed in similar capacity by the union tend to prove that fact. That the statements were made is the important thing, and they are admissible in evidence over the objection that they are hearsay because they are not offered for their probative value. The rule applied by this court in Lepak v. Lepak, 195 Minn. 24, 261 N. W. 484, and advocated by 6 Wigmore, Evidence (3 ed.) § 1766, is that if the fact that the statement was made is material to an issue in the case, the statement is admissible. It is only when a witness attempts to prove the truth of a given proposition by repeating what another said that his testimony is deemed hearsay. The statements made by persons in the presence and hearing of the witness threatening deceased or other union organizers in life or limb are material to the issue of whether the employment was extrahazardous. However, statements made by Corcoran to witnesses to the effect that he had been threatened do not come in this category. The threats to be admissible must have been made in the presence and hearing of the witness. 6 Wigmore, Evidence (3 ed.) § 1766, and notes, pp. 178, 179.

Aside from this testimony was the fact that the employer was classed as "an undesirable risk" by carriers writing workmen's compensation insurance in this state. L. 1929, c. 237 (3 Mason Minn. St. 1940 Supp. § 3634-1, et seq.). That was a matter of public record in the office of the industrial commission and one of which the commission could take judicial notice. Furthermore, the members of the industrial commission, as a part of their duties in administering the department of labor and industries, were not required to close their eyes to what the commission records and files showed concerning labor controversies existing in the community where the death occurred. Steenerson v. G. N. Ry. Co. 69 Minn. 353, 72 N. W. 713; Ward's Case, 286 Mass. 72,

190 N. E. 25; Joynes v. Pennsylvania R. Co. 17 I. C. C. 361; Ill. Cent. R. Co. v. Interstate Com. Comm. 206 U. S. 441, 454, 27 S. Ct. 700, 51 L. ed. 1128; Excess Income of St. Louis & O'Fallon Ry. Co. 124 I. C. C. 3; 4 Ind. L. J. 167; 29 Mich. L. Rev. 765; 44 Yale L. J. 355.

1 Mason Minn. St. 1927, § 4313, provides:

"The commission, or a commissioner, or a referee, in making an investigation or conducting a hearing under this act, shall not be bound by common law or statutory rules of evidence or by technical or formal rules of pleading or procedure, except as provided by this act; and shall make such investigation or inquiry or conduct such hearing in such manner as to ascertain the substantial rights of the parties. But all findings of fact shall be based only upon competent evidence."

If the commission's conclusions are supported by sufficient competent evidence they will not be disturbed even though some incompetent evidence was received. McDaniel v. City of Benson, 167 Minn. 407, 209 N. W. 26; Walker v. Minnesota Steel Co. 167 Minn. 475, 478, 209 N. W. 635; Cooper v. Mitchell, 188 Minn. 560, 564, 247 N. W. 805; 9 Minn. L. Rev. 576; 23 Minn. L. Rev. 68, p. 75. That the workmen's compensation act should be liberally construed in favor of the employe has been reiterated time and again by this court and numerous others. Green v. County of Chippewa, 189 Minn. 627, 631, 250 N. W. 679; Hyett v. Northwestern Hospital, 147 Minn. 413, 180 N. W. 552; 6 Dunnell, Minn. Dig. (2 ed. & 1932 Supp.) § 10385, p. 997; 80 A. L. R. 126.

In the absence of direct proof that Corcoran's death arose out of his employment, what inferences may logically be drawn from the facts and circumstances above set forth to establish a causal connection between the conditions inherent in his employment and the resulting injury? What factors subjected him to a greater risk than that to which the general public was subjected? The finding of a substantial sum of money on decedent's person justifies the elimination of robbery as a motive for the killing. There is

no evidence that deceased had any personal enemy, as was the case in Sivald v. Ford Motor Co. 188 Minn. 463, 247 N. W. 687. There is nothing to show that his death was caused by an unintentional shooting, as in Auman v. Breckenridge Tel. Co. 188 Minn. 256, 246 N. W. 889. Suicide is out.

The only possible explanation for the killing, deducible from all the competent evidence in the record, is to be found in the threats against him engendered by his activities as a union organizer. We believe they furnished sufficient proof from which the commission could draw the necessary inferences to establish causal connection between his employment and death. The record shows Corcoran's death to be reasonably traceable to his employment. Novack v. Montgomery Ward & Co. 158 Minn. 495, 198 N. W. 290.

Earlier Minnesota cases are helpful but not controlling. None of them is exactly in point. The Sivald case, 188 Minn. 463, 247 N. W. 687, relied on by relators, is clearly distinguishable. The facts in that case showed that the killing of the employe was inspired by a personal antagonism entirely unrelated to his work. In Auman v. Breckenridge Tel. Co. 188 Minn. 256, 246 N. W. 889, the employe was accidentally shot and injured by a boy playing with a gun in a near-by apartment. Relator there was engaged in the "course of his employment" at the time, but it was held that the injury did not arise "out of it." In order to hold that an injury arises out of employment within the meaning of the compensation act, it is necessary that the injury flow naturally from a hazard or special risk connected with the employment. State ex rel. Common School Dist. v. District Court, 140 Minn. 470, 168 N. W. 555, 15 A. L. R. 579. If the employment brings the worker into contact with a rough class of people and he is injured thereby, such injury has been held compensable. Trim Joint Dist. School v. Kelly [1914] A. C. 667; Weekes v. Stead & Co. 7 B. W. C. C. 398.

An interesting case is Gregory v. Industrial Comm. of Ohio, decided in 1935, 129 Ohio St. 365, 195 N. E. 699. A miner was employed to work in an "open shop" mine in a mining district which was practically entirely unionized. He was beaten up by

men from a near-by mine. His injuries were held to be compensable, the court saying that an "open shop" mine in such a community was a condition subjecting an employe thereof to greater hazard than it did the general public of the community. See also Hunt v. Gutzwiller Baking Co. 104 Ind. App. 209, 9 N. E. (2d) 129; Schmoll v. Weisbrod & Hess Brg. Co. 89 N. J. L. 150, 97 A. 723; Jersey Ice Cream Co. v. Industrial Comm. 309 Ill. 187, 140 N. E. 862.

Under conditions which existed in the labor field, particularly in the Minneapolis area, at the time of Corcoran's death, as disclosed by the record, and the conditions of which the commission was privileged to take judicial notice, a reasonable person, familiar with the whole situation, could well conclude that his death followed as a natural incident to his work and as a risk occasioned by the nature of his employment. It is not our province to weigh the testimony or to decide what inferences should be drawn therefrom. Rodman v. Smedley, 276 Pa. 296, 120 A. 266. The finding of the commission that the injury arose out of the employment is supported by sufficient competent evidence.

Respondent is allowed $100 attorneys' fees.

Writ discharged and order affirmed.

LORING, JUSTICE (dissenting).

Conceding everything that is said by the majority relative to the hazards of the employment, I take the view that whether Corcoran died as a consequence of exposure to such hazards lies wholly in the realm of speculation. As said by this court speaking through Chief Justice Wilson in the Novack case, 158 Minn. 499, 198 N. W. 292: "After the event it must appear to have had its origin in a risk connected with the employment." There is nothing to indicate that the homicide was not the act of some person acting for personal reasons. In fact the identity and motives of the killer are pure guesswork.

MR. JUSTICE STONE took no part in the consideration or decision of this case.