GEORGE M. SWIDER v. PILLSBURY MILLS, INC. AND ANOTHER.[1]

May 11, 1950.

No. 35,128.

*William D. Gunn* and *David J. Erickson,* for relator.

*L. N. Foster, E. A. Linnee, Snyder, Gale, Hoke, Richards & Janes,* and *Nathan A. Cobb,* for respondents.

[1]Reported in 42 N. W. (2d) 560.

LORING, CHIEF JUSTICE.

Certiorari to the industrial commission to review a decision denying compensation to relator. The facts are as follows:

Relator was employed by respondent Pillsbury Mills, Inc., for 29 years prior to August 1947. In 1936, he became ill and was incapacitated for some time. In 1944 he became ill again, and, at the company doctor's suggestion, went to the Mayo Clinic, where his condition was diagnosed as emphysema. This is a disease of the lungs in which the terminal air cells are distended and their partition walls ruptured by an abnormal pressure of air in them. On his return to Pillsbury Mills, relator was assigned to light work with a sack-cleaning crew, where he was constantly exposed to flour dust. Over a number of years, he continued to work and to use the company's sick benefit plan for periods of about 13 weeks in a year. If anything, his condition of emphysema grew gradually worse.

On August 21, 1947, relator was assigned to work in a different building from that in which he had been previously employed. There, he was engaged in emptying and sorting cartons of cake flour. The job involved loading a two-wheeled handtruck with about six boxes at a time, each containing about 12 two-and-three-quarter-pound cartons of cake flour and pushing the load a distance of 20 feet, where he unloaded each box by lifting it onto a table about two feet high. About 2 p.m. he felt a pain in his chest, which he described as follows:

"A. I dumped a box—it was a pretty hot day and I dumped it and at once I got a bad pain in here (indicating in the chest about the nipple line) I thought somebody cut me with a knife or ice pick."

At the suggestion of another employe, relator went outside for 10 or 15 minutes. A little after three o'clock he requested another worker to take him home. He returned to his employment the following day and continued to work through August 28. The company doctor saw him on the 22nd and gave him a prescription which

relieved him "a little bit." On arising from bed on August 29, relator had a "filled up" feeling in his chest. One of his ankles was swollen, and he could not put on his shoe. The company doctor was called and ordered him to Fairview Hospital, where he received treatment for a heart and lung condition. He stayed there until September 17, when he was released.

Five medical experts, two for relator and three for respondents, were called to testify at the hearing before the referee. Four agreed that relator had had coronary sclerosis in some degree for an indefinite period before August 21, 1947. On that day, he had a coronary occlusion or thrombosis, which resulted in an infarction[2] and injury to the muscles of his heart. The experts were in disagreement, however, as to whether relator's activity in moving and lifting the cake flour aggravated the coronary sclerosis to such an extent as to cause the occlusion. The referee held in his favor. On appeal, the commission, on its own motion, assuming to act under M. S. A. 176.19(2), appointed a neutral physician, Dr. S. Marx White, to make an examination of the injured person and report his findings to the commission. The order of appointment provided that Dr. White was to be furnished with a copy of the transcript of the evidence taken before the referee, together with the X-ray and cardiogram exhibits, and, after his examination of relator, he was asked to inform the commission as to his opinion on the following questions relating to relator's condition and the cause and effects thereof:

"* * * (1) Did the effort put forth by George M. Swider August 21, 1947, while in the employ of Pillsbury Mills, Inc., as evidenced by his testimony contained in the transcript of evidence, contribute to or cause a coronary occlusion resulting in myocardial infarction? (2) If answered in the affirmative, did the effects of the myocardial infarction partially or wholly affect employe's ability to work at an occupation that would bring him an income? (3) Is the employe afflicted with a subnormal chest condition caused or

---

[2]Stoppage or engorgement.

aggravated by his employment? (4) If answered affirmatively, what effect has same on his employability? (5) Is the employe either temporarily partially, temporarily totally, permanently partially or permanently totally disabled from earning a livelihood as a result of either the heart or chest condition, or as a result of a combination of both? (6) Add any additional information pertaining to cause and effect induced by the work being performed by said employe on August 21, 1947; * * *."

Dr. White read and considered the whole transcript, including the conflicting medical testimony, and answered the questions. He made a report adverse to relator. Accepting his findings, the commission found that his employment neither caused nor aggravated the heart condition nor caused nor aggravated an occupational disease.

The principal issue raised by relator is whether a neutral physician, appointed pursuant to § 176.19(2), may base his report in part upon a transcript of evidence taken before the referee.[3]

Section 176.19(2) provides in part:

"In case of dispute as to the injury, the industrial commission, or in case of a hearing, the commissioner or referee conducting the hearing, may, upon its or his own motion, or upon request of any interested party, designate a neutral physician of good standing and ability to make an examination of the injured person and report his findings to the commission, a commissioner or referee, as the case may be."

This statute says nothing about furnishing a neutral physician with a transcript or asking him questions which, in effect, inquired for his opinion as to how the case should be decided. The section

_____

[3] In Cooper v. Mitchell, 188 Minn. 560, 247 N. W. 805, and Kundiger v. Waldorf Paper Products Co. 218 Minn. 168, 15 N. W. (2d) 486, the neutral physician was given a transcript by the commission, but the propriety of the procedure was not before this court. In the Cooper case, objections were not made before the commission, and in the Kundiger case the parties consented to the procedure. In the case at bar, relator preserved the issue by timely objections before the commission.

provides that he is to be designated to *make an examination* of the injured person. Furnishing him with a transcript of the testimony or submitting to him such questions is neither authorized nor intended by the legislature. The statute authorizes only an examination of the injured person in case of "dispute as to the injury" and a report of findings upon such examination. Upon being notified of the intention of the commission to appoint a neutral physician, counsel for relator advised opposing counsel that he assumed—

"that his [the physician's] report will be limited to findings relative to the nature of Mr. Swider's disability based upon his examination and possibly the exhibits that are in evidence. I also assume that such questions and the answers thereto will relate to the chest condition as well as the heart condition of Mr. Swider."

After the report of the neutral physician was given to the commission, counsel for relator moved to strike out certain questions and answers upon the ground that § 176.19(2) authorizes the submission to the neutral physician of only questions which relate to the injury and the extent of the injury; that it does not contemplate submission of questions relating to cause and effect; and that it does not contemplate the submission of the transcript to the neutral physician for his opinion.

Section 176.19(2) does not authorize the industrial commission, in appointing a neutral physician, to submit to him a transcript of the evidence taken on the hearing or to make any report other than on his examination of the injured person. We hold that in furnishing the neutral physician with a transcript of the testimony and in submitting to him questions based thereon the commission has misinterpreted § 176.19(2). In view of such misinterpretation of the statute and the reliance placed by the commission upon the neutral physician's report, we hold that the case be remanded for a rehearing. Cf. Leland v. St. Olaf Lutheran Church, 213 Minn. 34, 4 N. W. (2d) 769.

Relator is allowed $250 attorneys' fees and costs in this court. So ordered.