## LAWRENCE BUSHNELL v. CITY OF DULUTH.[1]

February 5, 1954.

No. 36,172.

*Joe A. Walters,* for relator.

*Harry E. Weinberg,* City Attorney, and *Dale MacIver,* Assistant City Attorney, for respondent.

[1]Reported in 62 N. W. (2d) 813.

Magney, Commissioner.

Certiorari to review an order of the industrial commission fixing the value of nursing care being furnished injured employee.

Lawrence Bushnell, relator, was seriously injured on April 12, 1939, while in the employ of the city of Duluth. He suffered a fractured spine in the region of the first lumbar vertebra with complete section of the spinal cord, which caused paralysis of the body, complete and permanent, from the level of the injury down with loss of bladder and rectal functions. The full amount of compensation for total disability provided for under the workmen's compensation act has been paid by the city of Duluth, also the full amount allowable from the state's special compensation fund. He has also received ordered allowances for medical and nursing care from the time of the accident and allowances and reimbursements for other proper expenses.

Bushnell at the time of the hearing in 1952 was 32 years old. He lives in a two-bedroom, five-room, ground-floor apartment with his mother, who has kept house and taken care of him since his injury and is now 73. In his living he follows a regular routine. His bedtime is about midnight, and he gets up about noon. He normally sleeps all night. His mother gets up one or two nights a week to bring him water or render other assistance. He manages to get in and out of his hospital bed by the use of a chair which his mother holds. He has a radio and telephone alongside his bed. Upon arising, he takes a bath, shaves, dresses, and has his breakfast. He bathes himself except for his back, which requires his mother's assistance. He also shaves himself. His mother brings him water for shaving and brushing his teeth. She assists him in putting on his shoes and socks; otherwise he dresses himself. She prepares and brings in his breakfast. He is able to feed himself. At 5:30 he has a big supper and then a snack before he goes to bed. His appetite is very good. The mother brings him the urinal, and by pressing on the abdomen he is able to pass water by himself. A male nurse comes in every other day to give him an enema. The mother does not help. This nurse is paid three dollars a visit, the money being provided by the employer.

There are no expenses for drugs. He spends considerable time reading. Many friends come to visit him and play cards. He owns an automobile, which he drives himself. The car is used six or seven months of the year. When snow comes, it is put away. He has a very efficient wheel chair in which he wheels himself around in the apartment and goes over to the sink and helps himself to water. When he wants to go out in his car and when he returns, the mother pushes his wheel chair. She opens the garage door and pushes the chair on to a little ramp on the step going into the garage. She then opens the car door. He gets on a trapeze, which has been rigged up, and with the mother's help he gets into the car. We have gone into considerable detail in order to show employee's condition and the nature and amount of care provided by the mother in his behalf.

Originally in 1939 the industrial commission allowed $55 per month for the services of the mother. In March 1948 employee petitioned the commission for an order increasing the amount to $125 per month, which increase was granted. On July 1, 1952, he again filed a petition requesting an increase but did not specify any definite amount. The referee determined that the fair and reasonable value of the nursing services furnished by the mother was $13.50 per day for a seven-day week and directed the employer to pay said sum. The commission on appeal vacated and set aside the award made by the referee and found that the fair and reasonable value of said nursing services is $5 per day for a seven-day week. On employee's petition, a writ of certiorari to review the determination by the commission was thereupon issued. Employee contends that the decision of the commission is not sustained by the evidence and that the only competent evidence submitted supports the finding of the referee.

Employee produced as a witness one Effa G. McGregor, an operator of a nurses' registry. She testified that the service furnished by the mother is called general care and that such services are quoted as a 19-hour duty at $13.50 a day. Another nurse for the other five hours would be paid $1.12½ an hour. A 19-hour duty is defined as at least six hours' sleep at night and five hours off during the day. She also

testified that practical nurses would perform several duties not performed by the mother, such as giving a complete bath, enema, and shaving. It is quite apparent that the referee based his determination to a large extent on this testimony.

Between the time of the filing of the referee's decision and its vacation by the commission, two letters were filed with the commission. One was from the Oak Ridge Hospital and stated that its rehabilitation rate for patients is $200 per month, which includes 24-hour nursing care, daily physiotherapy treatments, enemas, and a complete recreational program for each patient. The other letter was signed by Dr. Frederic J. Kottke, associate professor and head of the department of physical medicine and rehabilitation, University of Minnesota. It stated that rest homes charge about $5.75 per day, plus the cost of supplies for taking care of patients; that registered practical nurses charge $8 a day for an eight-hour day; and that it is possible to get unregistered nurses on occasion or assistants to help patients for longer periods of time and probably at lower costs. The commission apparently treated these letters as exhibits, and, therefore, evidence in the case. The memorandum accompanying the decision of the commission states that the commission on its own order carried on an investigation with reference to charges made by private hospitals furnishing the necessary services and that these services could be obtained at $200 per month. The above letters, probably furnished by the employer, are undoubtedly part of the product of this investigation. The letters were not served on employee; no notice was given that they had been filed; and no opportunity was given employee to cross-examine. The employee contends that the letters are pure hearsay and incompetent evidence.

The commission is specifically authorized to make its own investigation. M. S. A. 176.52 provides that:

"The industrial commission, commissioner, or referee, if it or he deem it necessary, may, of its or his own motion, either before, during, or after any hearing, make an investigation of the facts set forth in the petition or answer."

That is not saying, however, that under the facts here the letters in question are competent evidence.

We will assume that employee's contention that the letters are improperly in evidence is correct. It does not follow, however, that for such reason the order of the commission must be reversed. The hearings before the commission and its referees are rather informal and of a summary character. They are not subject to the rules of evidence which govern proceedings in court, but all "findings of fact shall be based only upon competent evidence." § 176.54. If the conclusions of the commission and its referees are supported by sufficient competent evidence, they will not be disturbed for the reason that incompetent evidence may have been received. McDaniel v. City of Benson, 167 Minn. 407, 209 N. W. 26; Walker v. Minnesota Steel Co. 167 Minn. 475, 209 N. W. 635; Cooper v. Mitchell, 188 Minn. 560, 247 N. W. 805; Bliss v. Swift & Co. 189 Minn. 210, 248 N. W. 754; Anderson v. Coca Cola Bottling Co. 190 Minn. 125, 251 N. W. 3; Corcoran v. Teamsters & Chauffeurs Joint Council, 209 Minn. 289, 297 N. W. 4.

In our opinion the determination by the commission is amply supported by competent evidence. In March 1948 employee petitioned for an allowance of $125 per month, which was awarded him as the reasonable value of his mother's services. The testimony is that his condition has not changed since that time, and the services performed by the mother are the same as they were then. The consumer's price index for moderate-income families in Minneapolis, supplied by the bureau of labor statistics on March 15, 1948, was 167.7. On June 15, 1952, it was 190.3, and in September 1952, at the time of the hearing, it was 192.4. Thus there has been an increase of approximately 15 percent in the cost of living from the time $125 was fixed as the reasonable value of the mother's services. The commission increased the amount from $125 to $150-$155 per month, an increase of over 20 percent. It took into consideration the amount and nature of the care furnished by the mother and stated that the amount arrived at "more realistically meets the value of the service which is being provided by the mother." Also it will be

remembered that the male nurse receives at least $45 a month for his services.

We are of the opinion that sufficient competent evidence supports the finding of the commission, and its determination will not be disturbed.

Affirmed.