### ERIC HOLMLUND v. STANDARD CONSTRUCTION CO. AND ANOTHER.

240 N. W. 2d 521.

March 12, 1976—No. 45559.

*C. Douglas Allert,* for relators.
*Lewis & Salita* and *Wayne J. Salita,* for respondent.

PER CURIAM.

This matter is before the court to review a decision of the Workers' Compensation Board reversing the decision of a compensation judge who held that respondent employee's disability of May 11, 1973, was not causally related to an injury he sustained on June 25, 1964. The issue is whether the board was justified in disregarding the undisputed testimony of the medical witnesses in reaching its decision. We hold that it was not justified and reverse.

On June 25, 1964, the employee, Eric Holmlund, while employed by Standard Construction Company, fell from a ladder and sustained a fracture of his left shoulder blade and the displacement and fracture of his twelfth rib on the left side. He returned to work on August 12, 1964, and was subsequently awarded temporary total disability benefits for 19 3/5 weeks and permanent partial disability benefits of the left arm of 15 percent. No disability was claimed or paid for injury to his back or leg.

In January 1967 employee was admitted to North Memorial Hospital for lower back strain occasioned by a fall on a patch of ice. He received physical therapy and traction and after 9 days was released.

On June 18, 1973, Dr. Kenath Sponsel performed a laminectomy on the employee at L4-5. Thereafter the employee has not been employed. It is his claim that the operation of June 18, 1973, was made necessary by his injury of 1964 and he seeks benefits from his 1964 employer and its insurer.

In denying the employee's claim the compensation judge attached the following memorandum:

"The burden of proof rests on the petitioner. Although he had been seen by three orthopedists for his arm and shoulder problems, no mention was made of any lower back difficulties. For that reason his disability approximately nine years later has not been found as causally related to his injury of June 25, 1964. Dr. Sponsel, in his deposition conceded that if he was examined by

three orthopedists who did not have a recorded history of back-ache, that the probability that the present disability relates to the injury on June 25, 1964, became more remote."

The board reversed the compensation judge and held as follows:

"That as the result of personal injury sustained June 25, 1964 the employee became further temporarily and totally disabled May 11, 1973 to date of hearing and said disability was continuing as of said date."

In an accompanying memorandum, the board reached the following conclusions:

"1. That the employee did complain to Dr. Tambornino of some back pain 5 days after the injury. As insurer correctly points out the pain was in the low thoracic area and not in the low lumbar area. However, employee was complaining about his back at that time and we believe injury did occur to the back from that fall.

"2. Employee's testimony of recurrent intermittent low back pain is documented upon his admission to the hospital in 1966.

"3. We have the further testimony by the employee and his wife of further deterioration in the back necessitating employee's wife help him dress on occasion up to the point where he required further medical treatment and surgery to the low back area.

"4. The initial fall some 50 to 60 feet further corroborates the probability of back injury when combined with onset of recurrent low back symptoms within two or three months following the injury.

"5. We believe that Dr. Sponsel correctly related the employee's degenerative disc condition to the onset of this initial traumatic injury based on this history. The original fall initiated employee's back difficulty and was a substantial continuing contributing factor to employee's eventual need for surgery. It need not be the sole cause. Therefore, in accordance with the liberal

interpretation to be given to the Workmen's Compensation Law we have adopted the medical opinion by Dr. Sponsel."

Dr. Joseph Tambornino, an orthopedic surgeon, was the attending physician at the time of the employee's accident in 1964. The employee did not complain to the doctor of back trouble while in the hospital and was discharged two days after he was admitted. Dr. Tambornino's records show that on June 30, 1964, the employee complained of pain in the middle of his back but not in his lower back. However, no mention is made of back complaints in his records of July 24, August 12, August 31, and October 12. Dr. Tambornino testified in a deposition that in his opinion the employee's disability in 1973 was not related to the injury in 1964 for the following reasons:

"* * * [W]e saw him over a period of approximately four months * * * and aside from one complaint about the middle portion of his back on one occasion five days after the fall, he never had a complaint in regard to his lower back or legs and never asked us to examine it or treat it.

* * * * *

"* * * Normally, with any serious or really significant problem, the patient is aware of it soon after the injury. I would say that we pick up injuries within a day or two or a few days after a fall like this, but not more than that, if it's a significant thing."

Dr. A. Ross Lerner, also an orthopedic surgeon, examined the employee and although he did not testify he made reports on November 3, November 4, and November 23, 1964, and on February 15 and April 14, 1965, none of which contained complaints of low back difficulties.

On December 8, 1964, and February 11, 1965, the employee was examined by a third orthopedist, Dr. Sheldon Lagaard. No complaints were made to him of low back pain. Before the hearing Dr. Lagaard again examined the employee on September 12, 1973, and concluded that his disability at that time was unrelated to the injury of 1964. He stated:

"Well, from the history that I received from him, I couldn't say that there was a definite relationship at all. He didn't give me any—some months after injury, at least, didn't give me any specific history of any back trouble then, which I would have expected him really to have if there was a definite relationship there."

In response to an inquiry as to the cause of the employee's present low back condition, Dr. Lagaard concluded as follows:

"* * * We have a history here that I did not get, that I was not aware of, that he had slipped and apparently had trouble after that, somebody elses history, and I don't know the validity of it. And I think some of it's related to degeneration that we all go through; that the spine is more—that because of wear and tear it becomes a little more vulnerable at a later time. I can't say exactly what the cause was, but apparently there is some suggestion there that that was one of the factors that caused back trouble."

The compensation board in awarding benefits construed Dr. Kenath Sponsel's testimony to support a causal relationship between the 1964 accident and the 1973 disability. In our opinion, Dr. Sponsel's testimony does not permit that conclusion. The board in its memo stated: "We believe that Dr. Sponsel correctly related the employee's degenerative disc condition to the onset of this initial traumatic injury based on this history." The testimony on which the board relied is set forth as follows and it nowhere relates the degenerative disc condition to the 1964 injury with the degree of medical certainty which is necessary to constitute probative evidence. At no time did Dr. Sponsel testify that the injury of 1964 was, in his opinion, a contributing factor to the employee's 1973 disability:

"I think that a fall as described can initiate damage to an intervertebral disc, and then gets progressively worse and *can* become manifest clinically at a later time, although he did de-

scribe backache within his convalescence period of his rib fracture and his shoulder injury, according to the history." (Italics supplied.)

On cross-examination, Dr. Sponsel was questioned about his qualified opinion as follows:

"Q. But you didn't say that it did with reasonable medical certainty.

"A. Well, I just haven't seen him enough to know the continuity. I have to depend upon the history. He said his back had never gotten well since he fell, and I know that from observing patients—I have been twenty-five years in town—and I know from observing people who have had back injuries that subsequently have manifestation of a ruptured disc. In other words, in my experience plus study of the condition leads me to believe that you *can* injure disc that doesn't disable you for several years.

"Q. Okay. But it's somewhat speculative, wouldn't you say, to relate it back to something that happened almost ten years ago?

"A. I would say speculative is not the word I would use. I would say it cannot be stated with utmost certainty that it was related to the 1964 fall, although such an injury *could* be a mechanism initiating disc injury that *could* later lead to more trouble." (Italics supplied.)

The exchange continued as follows:

"Q. Okay. Fine. Now, if in fact there was some injury to the lower lumbar back in that fall, would you expect him to have some symptoms fairly soon after that of low back pain?

"A. I would think that if he initiated some damage to a disc that within three to six weeks he would probably have some type of discomfort in his back. You want to remember that acute pain like a fractured rib and a fractured shoulder will overshadow a less painful situation.

"Q. But nevertheless, you would expect some symptoms to occur, oh, three to six weeks after if there was some damage done in the fall?

"A. Ordinarily I think that's true.

\* \* \* \* \*

"A. If I assume that you have three orthopedic surgeons who examined him within a year and a half after his injury and they make no records of backache, why then it seems like it's a little more remote than it was before, the *possibility* that the disc level was seriously injured when he fell in June, 1964.

"On the other hand, counsel for Mr. Holmlund in this discussion suggested that there are some facts in evidence saying that he did have backache." (Italics supplied.)

Although the employee testified that from time to time between 1964 and 1973 he experienced low back pain, neither he nor the commission was qualified to render a medical opinion that his condition in 1973 was attributable to his accident in 1964. This was an issue of fact peculiarly within the province of the medical profession. Where, as here, the medical testimony most favorable to the employee is purely speculative, it will not support the finding of the board. To sustain a finding of causal relation it is not enough that there is medical testimony that the injury *might* have caused the subsequent condition or *could* have caused that condition but there must be medical testimony that the injury *did* cause that condition. Sullivan v. Hagstrom Const. Co. 244 Minn. 271, 278, 69 N. W. 2d 805, 809 (1955).

Reversed.