Mary BOLDT, Respondent,

v.

JOSTENS, INC., et al., Relators.

No. 47223.

Supreme Court of Minnesota.

Dec. 9, 1977.

Jardine, Logan & O'Brien and Graham N. Heikes, St. Paul, for relators.

Patrick J. Costello, Red Wing, for respondent.

PER CURIAM.

Certiorari on the relation of Jostens, Inc., and its compensation insurer to review a decision of the Worker's Compensation Court of Appeals awarding compensation to Mary Boldt for permanent partial disability which the compensation court found had been caused by an occupational disease. Our review of the record requires us to reject relator's claim that the medical evidence adduced by employee is insufficient to support the finding of causal relation between her work and her disability.

Employee began work at Jostens in 1964 in the ribbon department, where she applied heated glue to diplomas. The glue was made from animal products and had an odor described as rotten and wet, and like dirty socks. In subsequent years employee

worked intermittently in this department and in the shipping department. In June 1971 she began to have coughing spells and some months later noticed shortness of breath. In December 1971 she saw her regular doctor and an X ray then taken showed infiltration in her right upper lung. In January 1972 she consulted Dr. George Jackish, an internist, because of her persistent cough. A second X ray showed the same infiltration in her right lung and another area of infiltration in her lower left lung. Dr. Jackish prescribed antibiotics, but they did not help, and after blood and skin tests failed to establish the nature of her problem, he referred her to the Mayo Clinic, where Dr. David Dines, a specialist in the field of pulmonary medicine, saw her in May 1972. He diagnosed her condition as Goodpasture's Syndrome, a rare disease which attacks the basement membrane of the kidneys and the alevolar lining cells of the lungs. It is irreversible, progressive, and generally fatal, although Dr. Dines felt in August 1974 that treatment thus far had resulted in "holding" employee's renal and pulmonary condition. Even when he saw her in May 1972, however, he found marked impairment of the lungs and by September of that year she needed oxygen at all times. The impaired condition of employee's lungs resulted in great strain on her heart, causing many episodes of heart failure from December 1973 until her death July 31, 1975.

Dr. Richard Woellner, a specialist in pulmonary diseases who testified on behalf of relators, agreed with the diagnosis. Both physicians said that the etiology of Goodpasture's Syndrome is unknown. Dr. Dines said that it is an immunologic disease in which it is thought that the victim develops antibodies to some antigen (a substance to which he is hypersensitive) and that these antibodies react against the kidneys and lungs. He also said that the antigen to which a victim reacts "can probably be many different things and different for different people" and that it is not known whether the reaction results from one exposure to an antigen or from multiple exposures. Dr. Woellner said that it is not even known whether Goodpasture's Syndrome is produced by an antigen, and that he had no opinion as to the cause of employee's contracting the disease. Dr. Dines, however, expressed the opinion that employee's exposure to glue fumes "had a great deal to do with her illness, and certainly caused aggravation." Based on this opinion the compensation court found that this exposure had produced employee's disease.

 Citing *Hiber v. City of St. Paul,* 219 Minn. 87, 16 N.W.2d 878 (1944), and *Zappa v. Charles Mfg. Co.,* 260 Minn. 217, 109 N.W.2d 420 (1961), relators contend that Dr. Dines' opinion lacks an adequate factual foundation and therefore cannot serve as a basis for the finding of causal relation between employee's work and her illness. Although they stress the fact that the cause of Goodpasture's Syndrome is unknown, disability resulting from other diseases of unknown cause has often been held compensable. E. g., primary biliary cirrhosis (*Pommeranz v. State, Dept. of Public Welfare,* Minn., 261 N.W.2d 90, filed herewith); dermatomyositis (*Reierson v. Land O'Lakes Creameries,* 287 Minn. 179, 177 N.W.2d 301 [1970]); cancer (*Pittman v. Pillsbury Flour Mills,* 234 Minn. 517, 48 N.W.2d 735 [1951]). In this case, Dr. Dines' opinion was based on the recognized theory that Goodpasture's Syndrome is an immunologic disease, on his experience with this disease (from which he concluded that "offending irritants and fumes can play a great part" in many cases), and on the fact that employee had been in good health prior to contracting her illness. In the present state of knowledge about Goodpasture's Syndrome, a more complete foundation for the doctor's opinion could not have been furnished and, as in *Pommeranz v. State, Dept. of Public Welfare, supra,* which also involved an immunologic disease of unknown etiology, we hold the foundation was sufficient.

Relators also urge that Dr. Dines' opinion did not express reasonable medical certainty and was no more than a hypothesis about the cause of employee's illness. Read in isolation, some of the doctor's statements

appear to support their position.[1] In seeking the real meaning of his testimony, however, the caution with which medical experts render opinions should be recognized. As Professor Larson states:

"* * * It is a common experience of compensation and personal injury lawyers to find that the more distinguished a medical witness is, the more tentative and qualified are his statements on the witness stand. * * * The weight of such testimony, however, should not be too sharply discounted because of the disposition of the highly trained scientific mind to refrain from unqualified statements or opinions on such matters as causation." 3 Larson, Workmen's Compensation Law, § 80.32.

Cf. *Insurance Co. of North America v. Myers,* 411 S.W.2d 710, 713 (1966), an action for death benefits under the Texas Workmen's Compensation Act, in which the Texas Supreme Court said:

"* * * Reasonable probability [required to establish causal connection between a work injury and cancer aggravation] is determinable by consideration of the substance of the testimony of the expert witness and does not turn on semantics or on the use by the witness of any particular term or phrase."

See, also, *Hiber v. City of St. Paul, supra.*

■ Making allowance for the characteristic caution of medical experts and viewing Dr. Dines' testimony as a whole, we have concluded that it shows the doctor's basic opinion to be that employee's illness had been caused and aggravated by her exposure to the glue fumes. The evidentiary bases for this opinion, discussed above, permit the inference that it is probably true. It is well established that the truth of the opinion need not be capable of demonstration, that an expert is not required to express absolute certainty in the matter which is its subject, and it is sufficient if it is probably true. *Sullivan v. Hagstrom Const. Co.,* 244 Minn. 271, 69 N.W.2d 805 (1955). We conclude that the finding of causal relation has sufficient evidentiary support.

■ Relators' final contention—that employee did not give notice as required by Minn.St. 176.141—has no merit since relators concede that Jostens had actual knowledge in May 1972 that employee was quitting work because of her lung condition. Knowledge of the disease, as distinguished from knowledge of causal relationship between the disease and the employment, is sufficient. *Fitch v. Farmers Union Grain Terminal Assn.,* 274 Minn. 234, 143 N.W.2d 192 (1966).

Employee is allowed $350 attorneys fees.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.

---

1. Relators point to the following statement: "* * * [A]nd I think we have to at least say that it is possible that in her case she was sensitive to the fumes and developed this pulmonary renal reaction, and I don't think we can say more than that."