Jose **MADRIGAL**, Respondent,

v.

King **SEELEY** et al., Relators,

**Liberty Mutual Insurance Company,**
**Insurer.**

No. 49011.

Supreme Court of Minnesota.

June 15, 1979.

---

4. See, also, *Brooks v. A. M. F., Inc.*, 278 N.W.2d 310 (Minn. 1979), for a more complete analysis.

C. Douglas Allert, Minneapolis, for relators.

John T. Anderson, Jr., Compensation Atty., St. Paul, for respondent.

SHERAN, Chief Justice.

Certiorari on the relation of the employer and insurer to review a decision of a divided Workers' Compensation Court of Appeals awarding employee benefits for temporary total disability from September 25, 1975, to March 25, 1976, pursuant to a finding that he was disabled by tendonitis of the left shoulder caused by an injury in 1973 and a second injury consisting of aggravation of the condition by his work between February 11 and September 25, 1975. We affirm.

Employee worked at the right side of a machine which produced large molds. He was required to release sand by pulling with his left arm on a chute weighing 100 pounds. He testified that he injured his left arm and shoulder when the chute broke and he extended his left arm to hold the chute away from a worker at the left side of the machine. Although he did not remember missing work and did not know exactly when the incident occurred, the majority of the court of appeals found that it happened October 30, 1973, based on a first report of injury stating he had strained muscles in his left arm carrying molds on that date; a physician's report stating he had strained muscles in his forearm at work and had been disabled from November 10 to November 26, 1973; and a receipt for compensation for that period.

Employee said that his shoulder and arm never completely healed and that he asked to work at the left side of the machine so he could use his right instead of his left arm. He was permitted to do so from March 1974 to December 26, 1974. On that day he was injured in an automobile accident and could not work until February 11, 1975. He was then put at the side of the machine requiring him to use his left arm and shoulder over his protest that his shoulder was still sore. In succeeding months it became increasingly painful and by September 25 he could not work.

He then consulted Dr. Leon Steiner, a general practitioner, who diagnosed tendonitis and bursitis. After several months of therapy he released employee for work on February 20, 1976, with restrictions against lifting or pulling with his left arm and shoulder. In Dr. Steiner's opinion employee was totally disabled between September 25, 1975, and February 20, 1976, by chronic tendonitis. Asked to assume the occurrence of the 1973 incident, the doctor expressed the opinion that it was "exactly the kind of thing that could bring on" peritendonitis or bursitis. He also was of the opinion that employee's work from February 1975 until he quit had perpetuated his condition and kept the shoulder from healing. Dr. Meyer Goldner, an orthopedic surgeon, agreed with Dr. Steiner's diagnosis and opinions. Thus, if employee's testimony about the 1973 incident is accepted, the finding of causal relation between employee's work-related injuries and his disability has substantial support in the evidence.

Relying on *Turay v. Allied Enterprise*, 256 N.W.2d 71 (Minn.1977) relators insist that employee's testimony about the 1973 injury is not credible. They point out that the first report of injury and physician's report describe neither a shoulder injury nor the incident to which employee testi-

fied; that an osteopath whom employee saw in November 1973 and several times thereafter treated both shoulders but most often the right one; and that neither the osteopath nor Dr. Steiner recorded a history of the 1973 incident. Unlike Turay, however, no objective evidence conclusively disproves employee's testimony. Moreover, he has some difficulty speaking English, and the medical witnesses agreed that he was not a good historian. As in other cases turning on the credibility of a witness, we see no reason to substitute our judgment for the court of appeals' judgment on that issue. *Dotstry v. Radisson Hotel*, 266 N.W.2d 716 (Minn.1978).

Affirmed.

OTIS, Justice (dissenting).

I cannot agree with the majority that the relators have the burden of conclusively disproving the employee's testimony. This is not a rule we have heretofore applied in civil litigation and on the contrary, the respondent has the burden of proving by a fair preponderance of the evidence, first, that he sustained an injury; second, that it was work related; and third, that it was the cause of his disability. A fact finder is not bound by claimant's uncorroborated testimony without reference to whether or not it is credible. As Judge McCarthy points out in his dissent and the majority concedes, there is nothing in the record to support a finding of injury in November 1973, and neither the osteopath nor the medical doctor who treated respondent in November 1973, recorded any history of such an injury. Dr. Steiner first was aware of that claim in July 1977.

It is contrary to all human experience that a patient, however unsophisticated, who is treated for trauma would fail to advise his doctor of the events which led to his injury, or that the treating physician would fail to record that essential information if it were furnished him.

Judge McCarthy's conclusions are aptly supported by reference to black letter law: " 'physical facts which speak the truth unerringly cannot be overcome by oral testi-mony.' * * * 'Facts, proven to the point of demonstration, control as against mere declarations of witnesses.' "

There comes a point, even in workers' compensation cases, where it is the duty of the court to reject testimony which is incredible, and in my opinion this is such a case.

I would reverse.

PETERSON, Justice (dissenting).

I join in the dissent of Mr. Justice Otis.