**Edna MORGAN, widow of James R. Morgan, Deceased, Relator,**

v.

**STATE of Minnesota, University of Minnesota (self-insured), Respondent.**

No. 49081.

Supreme Court of Minnesota.

July 6, 1979.

Roger A. Johnson, Minneapolis, for relator.

Jeffrey B. Nelson, St. Paul, for respondent.

## PER CURIAM.

Employee's widow seeks review of a decision of the Workers Compensation Court of Appeals denying her claim for dependency compensation pursuant to its finding that the death of the employee, a 64-year-old steamfitter, did not arise out of and in the course of his employment by the University of Minnesota. We affirm.

Employee had been exposed to asbestos to an unspecified extent while working in a shipyard as a welder's assistant or a welder between 1941 and 1945. He then worked as a welder in various places until be began working for the University in 1952 as a steamfitter. There he worked about 2 hours a day on pipes in underground tunnels or enclosed spaces. Approximately 55 percent of these pipes were covered with an asbestos-based insulating material which he would cut or tear from pipes he was repairing. The tunnels were dusty and not ventilated, but the workers did not use masks to protect themselves from inhaling asbestos particles and other dust.

Employee also smoked a pack of cigarettes a day for many years and had developed a chronic cough sometime prior to 1968. Usually very active, he did not feel well in the fall of 1968. He quit smoking at that time and consulted Dr. W. A. Jeffries. It was then determined that employee had bullous emphysema and an asbestoma in his right lung. The asbestoma was removed in October 1968 and employee returned to work 4 months later. He continued to work until 1975 although he became increasingly fatigued. In February 1975 he noticed pain in his back after using a wrench and stayed home 2 days. When his back did not improve, he consulted Dr. Jeffries on April 21. He was hospitalized and tests then disclosed generalized metastatic carcinoma in his bones. Although it was determined that his lungs were free of cancer, its primary site was not found. In spite of attempted treatment employee died December 3, 1975. An autopsy revealed that the cancer had originated in employee's prostate gland,[1] and the pathologist who conducted the autopsy also reported "severe emphysematous change" in employee's lungs.

Although all medical witnesses agreed that the major cause of employee's death was metastatic carcinoma, two also characterized his emphysema as a significant or substantial contributing cause because it had resulted in a reduction of employee's pulmonary function. Relator's theory is that employee's emphysema was a cause of his death and that the emphysema was itself caused at least in part by asbestosis brought on by his exposure to asbestos in his work for the University. Thus, to establish that employee's death was compensable, relator had the burden of proving that (1) employee was exposed to sufficient asbestos while employed by the University

---

1. Although there was some suggestion that exposure to cadmium may be a cause of cancer of the prostate, employee had had infrequent exposure to that metal and relator made no serious effort to establish a causal relationship between employee's work and his cancer.

to cause asbestos-related disease; (2) that in turn caused his emphysema; (3) the emphysema caused a reduction in pulmonary function; and (4) the reduction in pulmonary function was a substantial factor in causing his death.

The third link in this chain of proof—that employee's emphysema caused a reduction in his breathing capacity—is not disputed. Whether or not that reduction in breathing capacity contributed substantially to his death, which was disputed, our review of the record compels us to conclude that relator did not sustain her burden of proving the first and second links: That employee's exposure to asbestos while employed by the University was sufficient to cause asbestos-related disease and that asbestosis was a cause of his emphysema.

With respect to these requirements, Dr. Charles E. Murray, an internist who treated employee after discovery of the carcinoma, expressed the opinion that there was a causal relationship between employee's work and his death, and between his work and the asbestoma removed from his lung in 1968. It was his view that asbestos particles were then present in other areas of employee's lungs also, that they had caused fibrosis, and that fibrosis was a contributing cause of employee's emphysema. His explanation for this opinion was that asbestosis is usually generalized, that a pathology report relating to the asbestoma described it as composed of proliferative fibroblasts and other types of cells which to a "non-pathologist" suggested fibrosis, and that the operating surgeon's report referred to adhesions of the outer lining of the lung to the chest wall.

Dr. Murray admitted, however, that he did not know how much exposure to asbestos is necessary to cause lung problems, how many years would be required from the time of exposure for an asbestoma to develop, nor whether the adhesions, which he thought would be fibrous in nature, had any relation to asbestos exposure. These admissions, together with the fact that the medical reports made in 1968 did not unequivocally state that fibrosis was present outside of the asbestoma and the fact that after microscopic examination of employee's lungs the pathologist who conducted the autopsy did not report the presence of fibrosis in 1975, leads us to conclude, as did the court of appeals and the compensation judge, that Dr. Murray's opinion cannot be accepted as probably true. See, *Boldt v. Jostens, Inc.*, 261 N.W.2d 92 (Minn.1977). We are required to conclude that relator did not sustain her burden of proving causal relation between employee's work activities and his death.

Our conclusion makes discussion of other issues raised by relator unnecessary.

Affirmed.