**Nicholas KOCH, Respondent,**

v.

**Oscar ARNESEN, et al., Relators.**

**No. 81–733.**

Supreme Court of Minnesota.

July 30, 1982.

Gilmore, deLambert, Aafedt, Eustis & Forde and Curtis C. Gilmore, Minneapolis, for relators.

Schneider, Neeser & Beccue and Donald E. Bruce, Willmar, for respondent.

SIMONETT, Justice.

By certiorari the employer-insurer seeks review of a decision of the Workers' Compensation Court of Appeals affirming by a divided vote the ruling of the compensation judge that the employee had sustained a compensable injury to his neck in an accident that had occurred 16 years before the employee's petition was filed. We reverse and remand for further proceedings.

On June 24, 1980, Nicholas A. Koch testified at the hearing on his petition for workers' compensation benefits for a neck injury allegedly sustained in an accident on September 12, 1964. Mr. Koch said he had fallen about 8 feet from a scaffold, landing

on his left hip. He testified that, while his neck "hurt a little" at the time, his big problem was an injury to his low back. He said the back injury occupied all his attention. He testified he initially had consulted with a chiropractor, then a physician. He continued, however, to work for his employer as a carpenter until December 1974, when he had low back surgery. Mr. Koch said his neck got progressively worse, and, finally, in the fall of 1978, a myelogram showed a defect at the C5–C6 area and a cervical fusion was performed.

The compensation judge held that the 1964 accident was causally related to the disc degeneration in the employee's neck and the employee's need for surgery. The court of appeals, one judge dissenting, affirmed.

The issues are whether there is a sufficient causal connection between the neck complaints and the 1964 accident, and, in this connection, whether it was proper for the court of appeals to consider a medical report that was in the file but that had not been offered into evidence by either party. Ordinarily we defer to the findings of the court of appeals, but in this instance we do not think the award can stand on the present state of the record.

Apparently, both parties recognized that the employee's recollection in 1980, when he made the claim for his neck, that his neck had bothered him at the time of the accident 16 years before, afforded at best slight support for a finding of a causal connection. Thus both sides endeavored to produce other evidence to either support or disprove this recollection.

Dr. Robert Wengler testified for the employee. He said Mr. Koch had been referred to Dr. Meyer Goldner in 1969, about 5 years after the accident. Dr. Wengler subsequently became Dr. Goldner's associate and saw the patient about six times between 1975 and 1978. Not until May 2, 1978, did the patient first complain to Dr. Wengler of neck difficulties. Dr. Wengler reviewed Dr. Goldner's office notes. These disclosed that Mr. Koch had first complained of neck problems to Dr. Goldner at an office visit on June 17, 1974, at which time the patient stated his neck had been particularly bothersome "in the early part of 1974." This would have been about 10 years after the scaffold accident.

The employer-insurer, on the other hand, noted that the employee had previously filed two other claim petitions for the 1964 accident, both claiming only low back injury. Hearings were held on these petitions on April 30, 1970, and on January 21, 1975. At both hearings the employee was asked to describe his complaints and in neither instance did he mention his neck.[1]

On the basis of this history, Dr. Wengler testified that he knew his patient to be an honest man and that "it's a reasonable assumption that the man did injure his neck in the fall that occurred in 1964." On the other hand, the employer-insurer called Dr. David Johnson, who testified "there is no way of knowing at all" if the neck problems were related to the 1964 accident. He conceded there might be a connection, but since the neck complaints surfaced after the elapse of some 10 years, from 1964 to 1974, there was no way of knowing. He pointed out the patient had "wear and tear" degeneration, *i.e.*, degenerative osteoarthritis; that the employee's active work for 10 years as a carpenter could make the arthritis symptomatic; and that in his opinion this was the cause of the neck problems.

This is not quite the ordinary case of the trier of fact choosing between two conflict-

1. On the first petition, the employee was awarded 15% permanent partial disability of the back. On the second petition, he was awarded an additional 10% permanent partial disability and was found to be temporarily totally disabled.

Interestingly, in the second petition filed in July 1974, the employee claimed his disability was caused by a new *Gillette* -type injury but the court of appeals found to the contrary, finding that all the disability was related to the original 1964 accident. Apparently, at the hearing held on the second petition in January 1975, Dr. Goldner testified by deposition that Mr. Koch began to be bothered by neck problems in 1974 and Dr. Goldner related the cervical condition not to the 1964 accident but to subsequent "work activities."

ing medical opinions. The evidentiary basis for the opinions must, of course, be considered and the burden of proving causal connection is with the employee. *See Blanchard v. Koch Refining Co.*, 282 N.W.2d 495 (Minn.1979); *Morgan v. State*, 281 N.W.2d 710 (Minn.1979). In choosing Dr. Wengler's opinion, the court of appeals noted the 1964 fall from the scaffold resulted in considerable trauma; a nail from the employee's carpenter apron was driven into the hip area, resulting in an admittedly significant lumbar injury.

But what apparently tipped the scales for a finding of causal connection was a medical report of Dr. Wesley Burnham found in the file by the court of appeals but which had not been admitted in evidence. This report is not a part of the record before us. Apparently, however, Dr. Burnham had examined the patient for the employer on January 27, 1965, on April 20, 1965, and again on November 1, 1965. In his report dated November 23, 1965, Dr. Burnham stated that "during the past six weeks, he has also had some aching in the base of his neck. This is apparently a new symptom." The majority opinion of the court of appeals cites this passage and then observes that it "gives added basis to Dr. Wengler's opinion and certainly gives a more negative basis to Dr. Johnson's opinion." Judge Adel, in his dissent, points out that Dr. Burnham obtained no history of neck symptoms in examinations of the employee conducted on January 27, 1965, and April 20, 1965. The dissent also noted, concerning the new symptom of aching in the base of the neck first reported by the doctor in November 1965, that Dr. Burnham stated, "I am not aware of any connection between the neck symptoms which have recently appeared and the previous injury to his low back."

■ The issue, then, is whether the court of appeals erred in relying on a medical report that was in its file but that had not been received in evidence. We hold, under the particular circumstances of this case, that it was error for the court of appeals to rely on this report in making its decision.

The majority opinion of the court of appeals cites as authority for considering Dr. Burnham's report Minn.Stat. § 176.391 (1980), and *Bushnell v. City of Duluth*, 241 Minn. 189, 62 N.W.2d 813 (1954). Section 176.391, subd. 1, provides:

Before, during, or after any hearing, the commissioner of the department of labor and industry, compensation judge, or workers' compensation court of appeals, if the matter is before it, may make an independent investigation of the facts alleged in the petition or answer.

It would seem this statute permits the court of appeals, as part of its "independent investigation" to consider Dr. Burnham's medical reports. On the other hand, Minn. Stat. § 176.411, subd. 1 (1980), says that findings "shall be based upon competent evidence only," but qualifies this by saying that when the compensation judge or the court of appeals makes an investigation or conducts a hearing it is "bound neither by the common law or statutory rules of evidence" provided, however, that "[t]he investigation or hearing shall be conducted in a manner to ascertain the substantial rights of the parties."

In *Bushnell*, after the referee's decision had been filed, the commission received two letters relating to health care costs. This court observed that the letters were not served on the employer, that no notice of filing was given, and that there was no opportunity to cross-examine on the letters. We then said we would assume the letters were improperly received in evidence but, even so, there was competent evidence in the record to support the finding of the value of nursing services. If the court of appeals is citing *Bushnell* to suggest that it made its findings on the record without considering Dr. Burnham's report, it would seem this suggestion is contrary to the express statement by the majority judges that Dr. Burnham's report "gives added basis to Dr. Wengler's opinion."

■ We conclude it was error for the court of appeals to have relied on Dr. Burnham's report in the manner that was done here. We hold that the court of appeals as

part of its own investigation could consider the medical report, but that before the report could be considered to be "competent evidence," certain minimal due process procedural requirements had to be met. This is in keeping with section 176.411, subd. 1, which, as noted, says, "[t]he investigation or hearing shall be conducted in a manner to ascertain the substantial rights of the parties."

Here the court of appeals selectively considered a 15-year-old medical report, relying on part of the report as to when neck symptoms surfaced but discarding another part where the examining doctor concluded no causal connection between the symptoms and the accident. Where the issue of causal connection is in serious doubt and where the nonrecord evidence on this issue is equivocal and susceptible to different interpretations, it seems to us that the "substantial rights of the parties" can only be fairly ascertained by giving the parties notice of the nonrecord evidence to be considered and allowing them an opportunity for their witnesses to testify and be cross-examined about it.

Reversed and remanded for further proceedings.

YETKA, Justice (dissenting).

I respectfully dissent. We have consistently held that this court will not sit as a trier of fact and will uphold findings made below if supported by credible evidence. *See e.g., Kahn v. State,* 289 N.W.2d 737 (Minn.1980); *Norby v. Arctic Enterprises, Inc.,* 305 Minn. 519, 232 N.W.2d 773 (1975); *MacNamara v. Boyd Trust,* 287 Minn. 163, 177 N.W.2d 398 (1970). The instant case primarily concerned evaluation of the credibility of the employee. This is the function of the Workers' Compensation Court of Appeals. *Madrigal v. Seeley,* 281 N.W.2d 366 (Minn.1979). In such situations, we should defer to the findings of the hearing officer and the court of appeals. *See Madrigal v. Seeley,* 281 N.W.2d 366 (Minn.1979); *Spilman v. Morey Fish Co.,* 270 N.W.2d 781 (Minn.1978); *Briggs v. McKee, Inc.,* 259 N.W.2d 266 (Minn.1977). Here, independent of Dr. Burnham's records, there was more than sufficient evidence to support the findings made below.

The employee was injured in September 1964 when he fell 8 feet from a scaffold and landed on his back and left hip. The force of the fall was sufficient to drive a carpenter's nail into the employee's hip. Thus, it is not inconceivable that the employee injured his neck in an accident involving that much force. In addition, the employee testified that, at the time of the 1964 accident, he felt pain in his hip and low back and that his "neck hurt a little bit then, but that wasn't the big factor at that time." There was no evidence conclusively demonstrating that the testimony of the employee was untrue and the compensation judge had the opportunity to observe the employee's demeanor and assess his credibility.

The employee's testimony also is supported by the medical evidence introduced at trial. Dr. Goldner's records from 1975 indicate that the employee complained of neck pain and numbness in his left arm in 1974. Dr. Wengler testified that, in 1978, he asked the employee how long the employee had been having neck difficulties. The employee replied that he began to have problems in the early years following the injury. The employee's main problem was with his back, however, so the employee directed the doctor's attention there. This tends to explain why the employee had not made any direct requests for treatment of his neck before 1978.

There was also sufficient additional expert testimony to support a finding of a causal connection between the fall and the neck injury. Dr. Wengler testified that it was reasonable to conclude, based on the nature of the fall and the employee's statements, that the neck injury and 1964 accident were causally related. This was sufficient testimony to establish causation. *See Boldt v. Jostens, Inc.,* 261 N.W.2d 92 (Minn. 1977).

The majority, in reversing the court of appeals, stresses that it was error to rely on Dr. Burnham's report. In *Bushnell v. City of Duluth,* 241 Minn. 189, 62 N.W.2d 813

(1954), however, we stated that where incompetent evidence is received, "[i]f the conclusions of the commission and its referees are supported by sufficient competent evidence, they will not be disturbed * * *." Clearly, there was sufficient competent evidence to support the finding of causation outside of Dr. Burnham's report. Moreover, it does not appear that the court of appeals acted improperly in considering the report. Under Minn.Stat. § 176.391, subd. 1 (1980), the compensation judge and court of appeals may conduct independent investigations. Minn.Stat. § 176.411, subd. 1 (1980) provides that, when making such an investigation or conducting a hearing, the compensation judge and court of appeals are not bound by common law and statutory rules of evidence, but that "[f]indings of fact shall be based on competent evidence." *See Harrison v. Schafer Construction Co.,* 309 Minn. 557, 244 N.W.2d 152 (1976). The court of appeals only noted that the report gave added basis to Dr. Wengler's opinion. This does not indicate that it used the report in making its specific findings. Nor, as the majority suggests, did consideration of the report violate the due process requirement that "[t]he investigation hearing shall be conducted in a manner to ascertain the substantial rights of the parties." Dr. Burnham was hired for adverse examination of the employee, and it is inconceivable that the employers were not on notice of either the report or its contents. Further, the court of appeals apparently only used the report in determining the weight to be given to Dr. Wengler's testimony that there was a causal connection between the injury and the accident. Thus, the majority's argument that the employer should have been given notice of the non-record evidence and that the "substantial rights of the parties" were violated is unfounded.

For the above reasons, I would affirm.

WAHL, Justice (dissenting).

I agree with the dissent of Justice Yetka.

TODD, Justice (dissenting).

I join in the dissent of Justice Yetka.

SCOTT, Justice (dissenting).

I agree with the dissent of Justice Yetka.