Walter SCHOPF, Respondent,

v.

RED OWL STORES, INC., and Commercial Union Assurance Companies, Employer-Insurer,

Red Owl Stores, Inc., and Hartford Insurance Group, Relators,

and

Minneapolis Retail Meat Cutters and Food Handlers Health and Welfare Fund, Respondent.

No. 82–61.

Supreme Court of Minnesota.

Aug. 31, 1982.

Frederick E. Kaiser, St. Paul, for relators.

David B. Morse, Minneapolis, for Schopf.

Kurt F. Walther, St. Paul, for Minneapolis Retail Meat Cutters and Food Handlers Health and Welfare Fund.

WAHL, Justice.

The Workers' Compensation Court of Appeals, with one judge dissenting, awarded Walter Schopf compensation for a permanent partial disability of his right hand and for temporary total disability from July 17, 1979, to August 19, 1979, pursuant to a finding that the lipoma which had caused his disabilities was work-related. Relators, Red Owl Stores, Inc., and its compensation insurer sought review, claiming that employee did not establish a causal relationship between the tumor and his employment by a preponderance of the evidence. We disagree and affirm the award.

Employee testified that over a 15-year period he opened an average of 200 cartons of groceries each day with a cutter, a tool held across the palm of his right hand, and stamped price marks on their contents, usually 24 cans or boxes, with a stamper. Employee also held the stamper in his right hand, its ball-shaped top cupped in the palm, and operated it by placing the marking end of the tool on the item to be priced and putting pressure on the ball with his fingers. In the early 1970's he developed a swollen area the size of a half dollar in the palm of his hand near his thumb. It did not then cause him pain or discomfort, but he showed his hand to his family doctor, Dr. Myles Efteland, in March 1975 and the doc-

tor suggested he wear a glove to protect his hand. The tumor gradually grew larger and more firm, and by 1977 employee's fingers felt numb. Ultimately he could hardly close his hand or grasp with it and tried to do his work with his left hand. He found this ineffective and consulted Dr. Efteland in May 1979.

Dr. Efteland referred employee to Dr. Peter Vogt, a reconstructive surgeon, who removed the tumor on July 17, 1979. The surgeon found that the tumor was well encapsulated and so large that it had stretched the medial nerve in employee's hand. Employee returned to work a month later but had some weakness in his hand. The medical witnesses agreed that he had sustained a 20% permanent partial disability but disagreed on whether there was a causal relationship between employee's work and the development of the tumor.

Dr. Efteland expressed the opinion that the development of the tumor could be causally related to employee's work, adding:

It seems quite reasonable to me that with that type of occupation, with repetitive pressure upon that involved area over a period of at least five years, that there could be a causal relationship.

He had reached this opinion after research in a publication by the Armed Forces Institute of Pathology and an article published in the *Journal of Bone and Joint Surgery* in June 1965 by Dr. Robert Booker, *Lipoblastic Tumors of the Hands and Feet.* Dr. Efteland said also that in his opinion employee's work had stimulated the growth of the tumor. On cross-examination he conceded that the etiology of tumors is not known. The following exchange also occurred:

Q. And, as I understand it, it is not your opinion that the lipoma that you observed or the tumor was caused by this man's employment?

A. No, that's not correct. It's my opinion it could very well have been caused by his employment.

Q. Can you say to a reasonable degree of medical certainty that it was caused by his employment?

A. I cannot prove it in a court of law, no.

Dr. Vogt, a board-certified plastic surgeon, expressed the opinion that the tumor was not work-related and "came about by itself just as most lipomas do." He added that an encapsulated lipoma is not related to trauma and that repeated trauma to an existing tumor might cause it to become scarred, but not necessarily enlarged. He had seen no evidence of bleeding or scarring in the tumor.

Dr. Mark Johnson, a board-certified specialist in internal medicine who examined employee for relators, expressed the opinion that employee's work had not caused the tumor or contributed substantially to its development. He also had reviewed the article by Dr. Booker and considered it a catalog of characteristics of tumors that the author had observed but not an attempt to ascribe etiologic factors in the cases described. Dr. Johnson agreed that the etiology of lipomas is not clear and said they typically have a slowly progressive course. He felt that if employee's tumor had been subjected to substantial trauma it would have been inflamed or scarred. He conceded, however, that employee's hand had been exposed to substantially more trauma than that to which most people are exposed. He agreed that employee's use of the tools could have caused some trauma to the tissue of his hand even if it did not result in scarring and also said that he would have advised employee in 1975 not to use the stamper in order to avoid injuring the tumor.

The compensation judge found that employee had sustained a personal injury to his hand as a result of his work activities, accepting Dr. Efteland's opinion in preference to that of the other medical witnesses. On appeal, the majority of the Court of Appeals affirmed, agreeing that Dr. Efteland's opinion was more credible than that of the other medical witnesses. Although aware that we have repeatedly recognized that resolution of conflicts in medical opinions is the function of the Court of Appeals, relators urge here that employee did not prove causal relationship between his work

and the disabling tumor by a preponderance of the evidence because Dr. Efteland's opinions that the tumor was caused and that its growth was accelerated by employee's work were speculative and lack reasonable medical certainty.

■ We do not agree. The doctor's commendably candid statement upon cross-examination that he could not "prove it in a court of law" was obviously a way of stating that he could not speak with absolute certainty, but he was not required to do so. His testimony, viewed as a whole, clearly shows that his basic opinion was that the repeated trauma employee's hand received in the course of his work had probably caused and had stimulated the growth of the tumor.[1] It is well established that a medical opinion does not have to express absolute certainty, its truth need not be capable of demonstration, and it is sufficient if it is probably true. *Sullivan v. Hagstrom Construction Co.*, 244 Minn. 271, 278, 69 N.W.2d 805, 809 (1955). Nor does the fact that the etiology of tumors is not known render the doctor's opinion speculative. *Boldt v. Jostens, Inc.*, 261 N.W.2d 92, 93 (Minn.1977). Since the Court of Appeals properly considered Dr. Efteland's testimony as well as that of the other medical witnesses, we will not interfere with its determination that his testimony on the issue of causation was the most credible.

■ We conclude that employee has sustained his burden of proving by a preponderance of the evidence the requisite causal relationship between his work and the lipoma.

Employee is awarded attorneys' fees of $400.

Affirmed.

OTIS, Justice (dissenting).

This is an appeal from a decision of a divided Workers' Compensation Court of Appeals affirming a compensation judge's award of benefits for temporary total disability and permanent partial disability. At issue is whether respondent Walter Schopf established by a preponderance of evidence that a tumor in his right hand was work related.

Walter Schopf was employed by Red Owl Stores, Inc., for approximately 15 years. His duties included opening an average of 200 cartons of groceries each day and stamping price marks on the contents of each carton, usually 24 cans or boxes. The stamper used by Schopf had a handle with a ball-shaped top which he held in the palm of his right hand as he repeatedly stamped price marks.

In the early 1970's Schopf developed a tumor in the palm of his right hand. However, it was not located where he typically held the ball-shaped handle of the stamper. By 1977 Schopf experienced difficulty closing his hand and visited his family physician, Dr. Myles Efteland, who referred him to Dr. Peter Vogt, a plastic surgeon. In 1979 Dr. Vogt surgically removed the tumor. Shortly thereafter Schopf filed this claim for compensation.

At the trial before the compensation judge, Dr. Vogt testified that the tumor in Schopf's hand was not work related, but "came about by itself just as most lipomas do." He also stated that when he surgically removed the tumor he observed no scarring or bleeding, which were conditions usually found in tumors resulting from repeated trauma such as Schopf alleged he experienced from the use of the stamper. Dr. Vogt was of the opinion that the tumor was an "encapsulated lipoma," a variety of tumor unrelated to trauma.

Dr. Mark Johnson concurred in the opinion of Dr. Vogt that Schopf's tumor was not related to his repeated use of the stamper. He testified that tumors which grow over a period of eight or nine years, such as Schopf's, are rarely caused by trauma.

Schopf's family physician, Dr. Efteland, stated that in his opinion the tumor "could be" work related, which he qualified by adding that "I cannot prove ... in a court of law" that the tumor was work related.

1. Employee had used the stamper over a million times.

This is a case where the employee simply failed to sustain his burden of proof. Two physicians relied upon specific medical observations to conclude that the tumor was not related to Schopf's use of the stamper, while one physician offered only a speculative opinion that the tumor "could be" work related. The evidence indicated that the tumor did not grow in the place where Schopf typically held the stamper.

In an action to recover workers' compensation, the burden of proof is upon the claimant. *See, e.g. Mansfield v. Gopher Aviation Co.*, 301 Minn. 36, 221 N.W.2d 135 (1974). Evidence which amounts only to speculation is insufficient to satisfy that burden. In *Holmlund v. Standard Construction Co.*, 307 Minn. 383, 240 N.W.2d 521 (1976), we considered the issue of whether an employee's disability was causally related to injuries sustained in an industrial accident. There we stated:

> Where, as here, the medical testimony most favorable to the employee is purely speculative, it will not support the finding of the board. To sustain a finding of causal relation it is not enough that there is medical testimony that the injury *might* have caused the subsequent condition or *could* have caused that condition but there must be medical testimony that the injury *did* cause that condition. * *

*Id.* at 389, 240 N.W.2d at 525 (emphasis in original). *See also Sullivan v. Hagstrom Construction Co.*, 244 Minn. 271, 278, 69 N.W.2d 805, 809 (1955); *Saaf v. Duluth Police Pension Relief Ass'n*, 240 Minn. 60, 65, 59 N.W.2d 883, 886 (1953).

Nor is this case governed by *Zingelman v. Wisniewski*, 265 N.W.2d 653 (Minn.1978), where we upheld an award of compensation in which a doctor's opinion as to causation was stated in terms of "could," "could be," "I can see," and similar language. *Id.* at 654. There the doctor's "testimony as a whole *clearly* disclose[d] that his basic opinion was that employee sustained injury to his lungs which has caused or contributed to his permanent and total disability." *Id.* (emphasis added). However, Dr. Efteland's overall testimony in this case suggests nothing more than that Schopf's tumor "could be" work related.

I concur in Judge Adel's dissent that "there is no credible evidence of causation," and the case should therefore be reversed.

AMDAHL, Chief Justice (dissenting).

I join in the dissent of Justice Otis.