**Helen M. ZWEBER, Respondent,**

v.

**ROSEMOUNT, INC. and Liberty Mutual Insurance Company, Relators.**

**No. C1–87–1519.**

Supreme Court of Minnesota.

Feb. 12, 1988.

Bruce B. Bundgaard, Minneapolis, for relators.

Arlen R. Logren, St. Paul, for respondent.

YETKA, Justice.

The relators, Rosemount, Inc. and its workers' compensation liability insurer, Liberty Mutual Insurance Company, (hereinafter employer/insurer), sought review of a decision of the Workers' Compensation Court of Appeals which modified an award

of benefits to Helen M. Zweber (employee). A compensation judge found that the employee had sustained a work-related spinal cord injury resulting in a condition of transverse myelitis and awarded temporary benefits to be followed by economic recovery compensation for a 75% permanent partial disability. On the appeal of both parties, the Workers' Compensation Court of Appeals affirmed the findings of primary liability and permanent partial disability, but modified the finding of maximum medical improvement and the award of economic recovery compensation. Employer/insurer have sought further review in this court on the issues of primary liability, degree of permanency and application of the simultaneous injury statute. The employee argues that there was error in calculating the total permanency using the simultaneous injury statute and asserts the correct degree of permanency was 69.2%. We affirm in part, reverse in part and remand for recalculation of the economic recovery compensation award.

The employee worked for the employer as a computer/distribution clerk. On November 7, 1984, employee was working the third shift (12:00 midnight to 8:30 a.m.). Her assigned task involved lifting stacks of invoices from a waist-high table on her left and twisting 180° to the right to place the papers on a tray. While performing this job at about 2:30 a.m., employee felt a burning pain in her upper mid-back. Within half an hour, the pain radiated through employee's back, and she had difficulty breathing. Employee was unable to continue working her shift and went home.

Over the next several days, employee noted increasing numbness and weakness in her legs. On November 12, employee's legs were paralyzed, and employee was unable to control voiding. Employee was hospitalized and eventually came under the care of Dr. Felix Zwiebel, a neurologist. Dr. Zwiebel diagnosed employee's condition as acute transverse myelitis at approximately the sixth thoracic level. Transverse myelitis is a relatively uncommon syndrome involving injury to the spinal cord.

The cause of transverse myelitis is largely unknown although various situations have been implicated as possible causes, including viral infection and relatively trivial trauma. In employee's case, diagnostic procedures ruled out compression of the spinal cord, inflammation and infection as possible causes. Laboratory tests also ruled out multiple sclerosis as a possible diagnosis.

Following extensive physical therapy, employee regained use of her right leg although the left leg remained virtually motionless. She was able to walk with the aid of crutches, a back brace and a short brace on the left leg. Employee also learned to control her bladder through self-catheterization and the use of adult diapers. She was still unable to control her bowel. In February 1985, employee returned to work, but left at the end of May because of disability-related problems.[1]

Employee filed a claim petition for workers' compensation benefits, and a hearing was held before Compensation Judge Thomas W. Walsh on April 30 and May 1, 1986. In support of her petition, employee submitted the medical reports of Dr. Zwiebel, the treating neurologist, and Dr. Thomas H. McPartlin, another neurologist. Both Dr. Zwiebel and Dr. McPartlin were of the opinion that, based on test results having excluded all known causes and the sudden onset of pain at the precise location of the spinal cord injury at the time she twisted at work, employee's acute transverse myelitis was causally related to her work. Dr. Zwiebel explained that "the rotational movement in lifting in some way caused some blood vessel injury that then resulted in a spinal cord injury." Dr. Zwiebel believed employee reached maximum medical improvement on April 28, 1985, and had an 85% permanent partial disability which, after "compounding" under the Workers' Compensation Act, resulted in a total of 75% permanent partial disability.

In opposition, employer/insurer submitted the reports and deposition of Dr. Brian M. Krasnow, the adverse neurologist. Dr. Krasnow was of the opinion that

1. Employee was hospitalized 2 weeks in April because of increased weakness in her legs.

the work was only coincidentally related to the onset of employee's symptoms. Additionally, Dr. Krasnow believed that, in spite of the laboratory tests, viral causes were still possible. He also believed that multiple sclerosis was a valid possible diagnosis. Dr. Krasnow assessed employee's permanent partial disability at 50%.

At the time of the hearing, consideration was being given to employee's having a colostomy for purposes of managing the bowel incontinence. Subsequent to the hearing, the colostomy was performed. Employee still wore adult diapers for the bladder incontinence.

Compensation Judge Walsh found that employee's acute transverse myelitis was work-related, that employee reached maximum medical improvement on April 28, 1985, and sustained a 75% permanent partial disability. Based on these findings, he awarded temporary total disability 90 days past maximum medical improvement or through July 27, 1985, and economic recovery compensation based on employee's pre-injury wage rate. Both parties appealed, and the Workers' Compensation Court of Appeals, by majority decision, affirmed the findings as to primary liability and permanent partial disability, but modified the disability awards. Finding that no maximum medical improvement report had been filed, the Workers' Compensation Court of Appeals awarded temporary total disability compensation through July 20, 1986, or 90 days past the date of the deposition of Dr. Zwiebel, as it was employee's first notice of a medical report of maximum medical improvement. The Workers' Compensation Court of Appeals also determined that employee was entitled to economic recovery compensation at 120% of the impairment compensation rate. Minn.Stat. § 176.101, subd. 3t. (1986). The Workers' Compensation Court of Appeals' dissent concluded that the aggregate total permanent partial disability, as calculated under Minn.Stat. § 176.105 (1986), was 69.2% and not 75%.

 1. Employer/insurer first challenge the finding of primary liability. In this case, two doctors expressed the opinion that exclusion of other causes through diagnostic testing, coupled with the sudden onset of symptoms while twisting at work, led to the conclusion that employee's work was a significant causative factor in the resulting disability. While the doctors disagreed as to the exact manner in which the spinal cord was injured, they agreed that a vascular compromise or decrease in blood supply occurring during the rotational movement at work caused the injury. Employer/insurer assert that the opinions of these doctors are much too speculative to support a finding of primary liability. However, given the present state of knowledge about idiopathic acute transverse myelitis, we believe there was sufficient foundation for the doctors' opinions. *See Boldt v. Jostens*, 261 N.W.2d 92 (Minn. 1977) (disability from disease of unknown cause may be compensable; causal relation between work and Goodpasture syndrome adequately established).

2. Employer/insurer next challenge the permanent partial disability ratings assigned to the loss of multiple bodily functions. Dr. Zwiebel assigned permanency ratings as follows:

(1) loss of use of lower extremity–45% 8 MCAR § 1.9006 H.1.c. (can stand but cannot walk);

(2) loss of anorectal function–30% 8 MCAR § 1.9006 H.5.c. (impaired voluntary control, incontinent without diversion);

(3) loss of bladder function–10% 8 MCAR § 1.9006 H.4.a. (impaired voluntary control evidenced by urgency or hesitancy, but continent without collective devices).[2]

 Employer/insurer maintain that the rating for the lower extremity should be reduced because employee can walk with crutches. The ratings are for loss of function of the body part. Any loss of function is in no way altered by the use of crutches as a substitute for that loss. A 45% rating for the loss of lower extremity function was appropriate. Employer/insurer also assert that the rating for anorectal function should be reduced because employee had a colostomy. Employee, how-

**2.** These rules are now codified at Minn. Rules 5223.0060, subp. 7.

ever, is still incontinent. The colostomy merely aids in managing the problem. It would thus appear that the 30% rating was appropriate. Employee has urged, and the Workers' Compensation Court of Appeals' dissent agreed, that the rating for loss of bladder function should be increased to 20%. A rating of 10% applies to those who have a urinary impairment, but are still continent. As employee is incontinent and must employ self-catheterization and adult diapers, we agree that a rating of 20% is more reflective of her condition. *See* 8 MCAR § 1.9006 H.4.a., b.

■ 3. Finally, employer/insurer challenge the calculation of the total permanent partial disability. Pursuant to Minn.Stat. § 176.105, subd. 4(c) (1986), in cases of simultaneous injury to multiple body parts, total permanent partial disability is to be determined by the use of a formula that reduces the amount of disability from that which otherwise would be assigned for an injury to the second body part so that the total disability rating is no greater than 100%.[3] The Workers' Compensation Court of Appeals' dissent believed, and employee agrees, that, under this formula, the proper total rating in this case is 69.2%. This would appear accurate.[4]

We, therefore, affirm in part, reverse in part, and remand for modification of the award of economic recovery compensation to reflect payment based on a 69.2% permanent partial disability.

Employee is awarded $400 attorney fees on appeal.

---

3. The statute specifies that the mathematical formula is that the total permanent partial disability $= A + B (1 - A)$ where $A =$ permanent partial disability to first body part; $B =$ permanent partial disability to second body part. Where a third body part is involved, the statute requires that the formula again be applied where $A =$ the disability rating resulting from application of the formula to the first two body parts and $B =$ permanent partial disability to the third part.

4. The calculation is made as follows:
$A + B (1 - A) =$ total permanent partial disability
$A + B - AB =$ total permanent partial disability
$.45 + .30 - (.45 \times .30) = .615$ (disability to two body parts)
$.615 + .20 - (.615 \times .20) - .692$ (total disability to three body parts)